SILVER PEAK MINES v. HANCHETT.

(Circuit Court, D. Nevada. March 20, 1899.)

No. 639.

MINING RIGHTS—INJUNCTION—VIOLATION BY COMPLAINANT.

As ancillary to an action at law, the owner of a mine filed a bill for injunction against one claiming the right of possession; and defendant was enjoined not to operate the mine, or interfere with the mining property, or commit trespass, waste, or nuisance. Subsequently an agent of defendant in charge of the premises turned them over to complainant. Complainant afterwards extended a tunnel for the purpose of performing the annual assessment work, the ore so extracted remaining on the dump; and, to avoid forfeiture of a policy of insurance covering a quartz mill, complainant kept a watchman on the premises. *Held*, that the acts of complainant tended to preserve the property, and hence the injunction would not be dissolved on the ground that complainant had abused the process of the court in doing the acts which it had caused defendant to be restrained from doing.

This is a bill by the Silver Peak Mines, a corporation, against L. J. Hanchett. An injunction issued as prayed, and defendant now moves to dissolve the same.

M. A. Murphy, for complainant.
Reddy, Campbell & Metson, for defendant.

HAWLEY, District Judge (orally). On the 22d day of May, 1897, the complainant filed its bill in equity, as ancillary to an action at law commenced by said Silver Peak Mines against the defendant, L. J. Hanchett, asking for the restitution and possession of certain mining property and premises situate at Silver Peak, Esmeralda county, Nev. On the same day complainant obtained an injunction against L. J. Hanchett, which reads as follows:

"And it is further ordered by this court that until the further order of the court, or the judge thereof, in the premises, you, the said L. J. Hanchett, the defendant above named, and all your attorneys, agents, assistants, servants, employés, and all persons acting for you or on your behalf, and each and every one of you, do absolutely desist and refrain from mining or extracting ores in or from the mines mentioned in the complainant's bill of complaint on file herein, or from removing or working the same, and from removing or working any ores now extracted or being on the dumps of the said mining claims, and from removing any of the earth, tailings, or slimes on the land or premises mentioned in the complainant's bill of complaint, or from working the same and extracting the gold and silver therefrom, and from running or in any manner using the quartz mill mentioned in complainant's bill of complaint, and from disposing or removing any of the machinery belonging to, or in any manner connected with, said quartz mill, or situate therein, or * * * upon or connected with said premises mentioned in said complainant's bill of complaint, and from committing any trespass, waste, or nuisance whatever on said premises."

On March 10, 1899, notice thereof having been previously given, the defendant, L. J. Hanchett, moved the court to dissolve said injunction, and for an order directing the complainant "to restore to the defendant the possession of all the real and personal property in the bill of complaint herein described, and all the personal property thereon and appurtenant thereto," upon the following grounds, viz.:

"(1) That the complainant itself has, through its agents, servants, and employés, since the issuance of said injunction and restraining order, violated the same, and entered upon the mining ground, lands, and premises in said complaint mentioned, and mined and extracted gold and silver bearing ore, rock, and earth therefrom, and took and converted the same to its own use. (2) That the complainant has, since the commencement of this suit, and the issuance of the injunction and restraining order, forcibly entered upon the mining ground, lands, and premises in complaint described, and ousted and ejected defendant therefrom, and has ever since, and does now, by force hold possession thereof, and exclude defendant therefrom. (3) That the complainant has abused the process of the court, and has itself not respected and obeyed said injunction and restraining order. (4) That complainant has, by means of said injunction and restraining order, and under the protection thereof, forcibly and wrongfully taken from defendant possession of all the property in said bill of complaint mentioned."

This motion was made upon affidavits filed by the respective parties, and upon the papers and pleadings on file and of record in the suit.

Underlying all the points herein raised is the question whether L. J. Hanchett has any such interest in the property as entitles him to make the motion. His interest, if any, or whatever it may be, is derived by virtue of a written contract or agreement for the purchase of the property by him from the Silver Peak Mines, entered into between the parties on the 7th day of September, 1894, and an extension of the time for compliance with the original agreement, entered into on the 12th day of November, 1895, extending the time until the 12th day of August, 1896, and the acts of the respective parties in regard thereto. The question as to Hanchett's interest is important. It is raised and presented in the law case, which is soon to be tried. No opinion in regard to this matter will be expressed or intimated on this hearing. The motion will be disposed of on other grounds.

It will be noticed that the injunction issued in this case is only against the defendant, L. J. Hanchett. The effect of the injunction was to restrain him from the commission of the acts mentioned in the injunction. It did not restrain the complainant from the commission of any act. There are, however, numerous and well-considered cases where the courts have held that, although the complainant was not restrained, he could not "with impunity do the acts which at his instance the defendant has been restrained from doing," and that, where the evident object and purpose of the writ are to preserve the existing status of the property involved in litigation until a final trial and adjudication can be had, "it is a gross abuse of the process of the court for the complainant to disregard his own injunction, after having, by means thereof, tied the hands of his adversary." Vanzandt v. Mining Co., 48 Fed. 770; Haight v. Lucia, 36 Wis. 355, 361; Mowrer v. State, 107 Ind. 539, 543, 8 N. E. 561; 10 Am. & Eng. Enc. Pl. & Prac. 1104. There is no doubt, therefore, that upon a proper showing to the effect that a complainant is not acting in good faith, and has either sought for and obtained, or uses, an injunction for the purpose of enabling him to obtain an undue advantage over the opposing party, the court could and should interfere to prevent the commission of any act by the complainant having that tendency by restraining him, as well as the defendant, from doing such acts, or any act that would materially disturb the existing status

of the property in litigation; or, as is held in some of the authorities above cited, the court might dissolve the injunction against the defendant. But in connection with the rule above mentioned the law is equally as well settled, as stated in 10 Am. & Eng. Enc. Pl. & Prac. 1104, that "an order of injunction, prohibiting any disturbance of or interference with the status of property pending litigation concerning it, does not prevent any party having an interest in such property from doing whatever is reasonably necessary for its preservation." Behrens v. McKenzie, 23 Iowa, 333, 341; Mowrer v. State, supra.

With reference to these general principles, the facts presented to the court will be examined. It is proper to state that there is a mass of irrelevant matter included in the affidavits on both sides that will not be noticed, and upon some of the other facts there is a direct conflict.

It appears, to the satisfaction of the court, that Hanchett was in possession of, and claimed to be entitled to the possession of, the property, after the expiration of the second agreement extending the time of his right or option to purchase the property; that, within a few months after the service of the injunction upon him, he left Nevada, and went to California, where he resides; that when he went away he placed one Louis Tietjen to act as his agent in charge of the mining property and certain mining tools; that said Tietjen soon thereafter left the premises, assigning as the reason therefor that he had not been paid by Hanchett; that the said Hanchett also placed Frank Gillespie and Fred Kelly in possession and charge of the stone house, assay office, and mill; that said parties, acting as Hanchett's agents, entered upon the possession of some or all of said property; that both of said parties, prior to the filing of the notice to dissolve the injunction herein, voluntarily went away from Silver Peak, and have not returned; that in October, 1898, the said Kelly notified S. R. Wasson, the agent of complainant, that he was going to leave Silver Peak, and, at the request of said Wasson, delivered to him the key to the stone building, which was occupied by Hanchett during the time he resided at Silver Peak (the house in which Wasson had been living being in a dilapidated condition, and not fit for further occupancy); that Wasson, with the assistance of Kelly, moved his furniture into the stone building, and stored most of the personal property therein belonging to Hanchett in a secure and safe place, and thereafter notified Hanchett that he would purchase the balance of the personal property, if Hanchett would sell the same for what it was worth, and that, if Hanchett did not wish to sell the same, he would see that it was properly packed up, and stored in a safe and secure place; that during all the time mentioned herein the said S. R. Wasson was, and for many years prior thereto had been, and still is, in the general charge of all the property of the Silver Peak Mines, the corporation complainant herein, as its agent to care for and protect said property against trespassers, etc.; that Hanchett, during his possession of the property under the contracts before stated, commenced the running of a certain tunnel, as he was authorized to do, and ran the same for the distance of 300 feet, or thereabouts; that Wasson, after Hanchett left the premises, went into said tunnel, and ran the same for a distance of 250 feet or more,

into the Drinkwater and Crowning Glory lodes, for the purpose of performing the annual assessment work upon the unpatented mines in the Silver Peak group owned by complainant, and which was necessary to be done in order to comply with the laws of the United States, in order to prevent a forfeiture of its rights in said mines, and subject them to a re-entry and location by outside parties; that no ore was extracted from said mines, except such as was necessarily taken out in the running of said tunnel, and all the ore that was extracted remains upon the dump; that no ore has been removed from the property, or converted by the complainant to its own use; that the mill upon said property is insured by the complainant, and, by a clause in the policy, the mill must be "continually watched, night and day," or the policy will be subject to forfeiture, and, to save the life of the policy, complainant has employed a watchman to care for and watch said mill.

I am clearly of opinion that the case, as presented, does not come within the first general rule, but does come within the second rule, hereinbefore announced. The case, in its facts, is essentially different from the cases cited and relied upon by defendant's counsel. One illustration is sufficient. In Haight v. Lucia, both parties claimed to be the owner of the land in dispute, which was chiefly valuable for the timber situate thereon. After the plaintiff obtained an injunction against defendant from committing any waste on the land, he, immediately after the service of the injunction upon defendant, entered upon the land, with a number of employés, and cut down a large quantity of timber; thus destroying the substance of the estate. The acts performed by the complainant in this case tended to preserve, instead of to injure or destroy, the property. The evidence falls far short of establishing the fact that Hanchett has been, by force or otherwise, ejected from the premises, or any part thereof. In this respect the present case is clearly distinguishable from Vanzandt v. Mining Co., supra. Moreover, the complainant is the unquestioned owner of the property described in the bill of complaint herein. It certainly has the right to protect and preserve its own property, and prevent any loss thereof or injury thereto. Hanchett does not own the property. He has no title thereto. All he claims is the right of possession which he obtained by virtue of the contract or contracts giving him an option to purchase the property, within the time specified therein, at a stipulated price. He did not comply with the covenants on his part agreed to be performed, and in his answer claims that he was prevented from so doing by various acts of the complainant. The question whether, after the time specified in the contracts, Hanchett was in possession of the property by virtue of said contracts, or other agreements or conduct between the parties thereto, as claimed by the defendant, or was simply allowed to remain in possession of said property by the mere sufferance of the complainant, as claimed by it, will arise upon the trial of the action at law, where all the evidence in regard thereto can be fully presented, heard, and determined; and it will not, therefore, be here discussed.

From the facts presented on this hearing, it is clear that the defendant is not entitled to any relief upon this motion. The motion is denied.