LAWRENCE ET AL. *v.* ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY.

No. 99. Argued December 3, 1928.—Decided January 2, 1929.

*Mr. C. B. Ames,* with whom *Messrs. Edwin Dabney,* Attorney General of Oklahoma, and *T. L. Blakemore* were on the brief, for appellants.

*Mr. C. B. Stuart,* with whom *Messrs. E. T. Miller, M. K. Cruce,* and *Ben Franklin* were on the brief, for appellee.

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

This case was before us in *Lawrence* v. *St. Louis-San Francisco Ry. Co.*, 274 U. S. 588. There, we reversed the decree granting an interlocutory injunction. Now the case is here on appeal from the final decree, which granted a permanent injunction. This decree was entered upon motion to dismiss the bill and supplemental bill. For the main facts reference is made to our earlier opinion. The supplemental bill sets forth the occurrences since entry of the interlocutory decree. It is largely with these that we are now concerned.

The petition for appeal from the interlocutory decree prayed " that the proper order touching security be made without superseding the decree." The appeal was allowed upon the filing of the usual bond for costs. The District Court, three judges sitting, had offered to the appellants the opportunity of suspending the interlocutory decree by giving a supersedeas bond. The offer was declined. Then the decree was made effective upon the Railway's filing a bond in the sum of $50,000. Immediately thereafter, the Railway commenced removal of its shops and division point from Sapulpa to West Tulsa. Before the interlocutory decree was reversed by us the removal had been completed; and the new shops and division point had been put into complete operation at West Tulsa. Promptly after our decision, the appellants applied to the District Court for an order requiring that forthwith, and before any further proceeding be taken in the cause, the Railway restore the conditions with respect to its shops and division point existing prior to the issue of the interlocutory injunction; and specifically " that it be required to re-build its trackage at Sapulpa as such trackage then existed; to return to Sapulpa all machinery and employees which have been removed by reason of said

interlocutory injunction; to restore the runs of its trains and particularly its freight trains so that Sapulpa will be the division point for said runs as it was before the issuance of said interlocutory injunction."

The District Court denied the motion. Instead, it issued an order that the Railway Company " as a preliminary step to further hearing of this cause " apply to the Corporation Commission of the State to dissolve the restraining orders theretofore made by it, restraining removal of the shops and division point, and to ratify the removal which had been effected. The Railway made application as directed; and the Commission set it for hearing. Then these appellants objected to any consideration of the application by the Commission, unless and until the Railway should have returned its shops and division point to Sapulpa. Their contention was that in making the removal, although under the protection of the interlocutory injunction, the Railway acted in contempt of the Commission's earlier order restraining such action; and that, for this reason, it should not be heard by the Commission until it had purged itself of the contempt. The Commission sustained the objection. Thereupon, the Railway filed its supplemental bill setting forth these and other facts; and the case went to final hearing in the District Court.

The appellants contend that it was error to grant the permanent injunction, because the suit was prematurely brought. They argue that the statute requiring application to the Commission before removal of the shops was a valid exercise of the police power; that this Court reversed the interlocutory decree because the Railway Company had omitted to make such application before seeking relief in the federal court; that the removal of the shops, although under the protection of the interlocutory injunction, was an abuse of the process of the court; that this action constituted a contempt of the Commission;

and that, since the Railway did not offer to purge itself of the contempt by restoring the *status quo,* and the Commission has refused to condone it, the District Court erred in granting the relief prayed.

The contention is unsound. The purpose of the restraining order, issued upon the filing of the bill, had been to maintain the *status quo.* It, therefore, contained a clause ordering " that the plaintiff in this case take no action toward removing its shops, division point, or changing the runs of its trains, until further order of this Court." This clause was omitted from the interlocutory decree. The purpose of the injunction thereby granted was not, as in *Vanzandt* v. *Argentine Mining Co.,* 48 Fed. 770; *Silver Peak Mines* v. *Hanchett,* 93 Fed. 76; and *Twenty-one Mining Co.* v. *Original Sixteen to One Mine,* 240 Fed. 106, to maintain the *status quo,* but to prevent interference with the desired change. " The interlocutory decree," as we have said, " set the Railway free to remove the shops before the case could be heard on final hearing." (274 U. S. 588, 594.) The District Court had, when it issued the injunction, jurisdiction of the parties and of the subject matter; and it has never relinquished its jurisdiction. It is true that this Court has held that the interlocutory decree was improvidently granted. But it did not declare that the decree was void. (274 U. S. 588, 591–592.) Compare *Arkansas Comm'n* v. *Chicago, Rock Island & Pacific R. R. Co.,* 274 U. S. 597, 598. The interlocutory injunction, until dissolved by our decision, was in full force and effect. The appellants refused to assume the risk attendant upon suspending the decree by means of a supersedeas bond. The appeal did not operate as a supersedeas. *Hovey* v. *McDonald,* 109 U. S. 150, 161; *Leonard* v. *Ozark Land Co.,* 115 U. S. 465. Compare *Virginian Ry.* v. *United States,* 272 U. S. 658, 668–669.

Thus, the interlocutory decree relieved the Railway from any duty to obey the restraining order of the Com-

mission. Because such was its effect, the lower court required the Railway to furnish the $50,000 bond. By availing itself of the liberty given to remove the shops and division point, the Railway assumed the risk of being required to restore them if it should be held that the interlocutory injunction was improvidently granted, see *Bank of United States* v. *Bank of Washington*, 6 Pet. 8, 17; *Arkadelphia Co.* v. *St. Louis Southwestern Ry. Co.*, 249 U. S. 134, 145–146; and also the risk of having to compensate the appellants, to the extent of $50,000, for any damages suffered by reason of the removal. But it was clear that, upon final hearing, the Railway might prove that it was entitled to a permanent injunction; and the District Court was not obliged to order restitution meanwhile. If it had not, when entering the interlocutory decree, required that bond be given, no damages could have been recovered on the dissolution of the injunction. *Russell* v. *Farley*, 105 U. S. 433, 437; *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co.* v. *Washburn Lignite Coal Co.*, 254 U. S. 370, 374. Although it required the bond, and this Court held that the interlocutory injunction had been improvidently issued, the District Court could, in its discretion, refuse to assess the damages until it should, after the final hearing, have determined whether the plaintiff was entitled to a permanent injunction. See *Redlich Mfg. Co.* v. *John H. Rice & Co.*, 203 Fed. 722. It might then refuse to allow recovery of any damages, even if the permanent injunction should be denied. See *Russell* v. *Farley*, 105 U. S. 433, 441–2.

Moreover, the reasons for not requiring restitution before final hearing were persuasive. It appears that there was nothing in the new location which could in any wise affect injuriously the health of the Railway's employees. The location of the shops at West Tulsa and the vicinity in which employees may live are sanitary. The removal to West Tulsa had cost $150,000. It had resulted in a

monthly saving of at least $33,500. It had effected a vast improvement of the interstate and other service. To restore the shops and division point to Sapulpa and make there the improvements essential to good service would require an outlay of $3,000,000, besides the expenditure of $300,000 for the shops; and it would entail in addition the operating expenses then being saved. Even with such large expenditures, restoration of the shops and division point to Sapulpa would inevitably impair interstate and other passenger and freight service. On these facts, which were established by affidavits filed in opposition to the motion to compel restitution, it must have seemed to the District Court at least probable that upon final hearing a permanent injunction would issue; and that to order restitution meanwhile would be, not merely an idle act, compare *Goltra* v. *Weeks,* 271 U. S. 536, 549, but one imposing unnecessary hardship on the Railway and the public.

We have no occasion to pass upon the constitutionality of the state statute. The facts just stated were later set forth in the supplemental bill of complaint and by submission on motion to dismiss the bill and supplemental bill were admitted on the final hearing. Assuming the statute to be valid, an order of the Commission denying leave to remove would, on these facts, clearly have violated the commerce clause. Compare *McNeill* v. *Southern Railway Co.,* 202 U. S. 543, 561. The Commission's refusal to hear the application was tantamount to such an order. The Railway was not in contempt. The terms of the restraining order had been superseded by the interlocutory injunction. To refuse to hear the application, which the District Court had directed the Railway to make, was an attempt to inflict punishment for an innocent act.

*Affirmed.*