THE STATE OF FLORIDA, ex rel. FRED H. DAVIS, as Attorney General, and ex rel. A. S. WELLS, E. S. MATHEWS and MAMIE G. EATON, as Railroad Commissioners of the State of Florida, *Relators,* vs. ATLANTIC COAST LINE RAILROAD COMPANY, *Respondent.*

140 So. 817-824.

En Banc.

Opinion filed January 8, 1932.

Opinion on Petition to Vacate Order filed February 25, 1932.

*Cary D. Landis,* Attorney General, *T. T. Turnbull* and *D. A. Finlayson,* for Relators;

*W. E. Kay, John L. Doggett* and *Thomas B. Adams,* for Respondent.

PER CURIAM.—Prior to August 25, 1927, the Atlantic Coast Line Railroad Company operated a line of railroad from Thomasville, Georgia, to Monticello, Florida, the railroad depot being on the eastern side of the City of Monticello. On the above date the railroad company abandoned the line and service into Monticello and removed the track from Monticello north to Yuste. Upon the relation of the Attorney General and the Railroad Commissioners, an alternative writ of mandamus was issued, September 17, 1927, by this Court commanding the railroad company

"To restore your tracks along the line of your railroad hereinbefore described as that part of your Thomasville, Georgia-Monticello, Florida Branch running from Yuste in Jefferson County Florida to Monticello, Florida, or so much thereof as has been torn up and dismantled, to maintain said tracks and roadbed over and along said above described line of railroad from Yuste, Florida, to Monticello, Florida in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service imposed upon and accepted by you, to restore the train service over said line of railroad and to observe the train schedules that were in effect thereon prior to the said 25th day of August A. D. 1927, until permission shall have been lawfully obtained by you from the proper authority authorizing such discontinuance

and abandonment,'' or to ''show cause why you re-
fuse so to do.''

A motion to quash the alternative writ was made upon
the grounds that the Court is without jurisdiction and the
State and its officers are without authority in the prem-
ises, the contention being that the Federal authority con-
trols. The motion to quash was denied. State ex rel. v.
A. C. L. R. R. Co., 95 Fla. 14, 116 So. 49.

By answer the respondent company averred the grant-
ing to the respondent by the Interstate Commerce Com-
mission under the Federal statute of a certificate of con-
venience and necessity for the construction and operation
of the extension of a line of railroad to connect the north-
ern terminus of respondent's ''Perry branch and the
northern terminus of its Thomasville (Ga.)-Monticello
branch''; that such certificate of convenience and neces-
sity gave respondent at least implied authority to re-
move its railroad track between Yuste and Monticello,
the connecting line from the Perry branch north passing
west of Monticello to Yuste. This answer was on May
14, 1929, held insufficient and a peremptory writ was
awarded. State ex rel. v. A. C. L. R. R. Co., 97 Fla. 816,
122 So. 256.

The respondent moved that the peremptory writ be
stayed pending the determination of an application made
to the Interstate Commerce Commission for authority to
abandon the line between Yuste and Monticello. On No-
vember 20, 1929, the following order was made:

''The Court, in no wise receding from its judgment
in this cause awarding a peremptory writ of manda-
mus, nevertheless for reasons of comity hereby orders
a stay of the issuing of said peremptory writ until the
matter now pending before the Interstate Commerce
Commission involving the removal of the railroad track
from Yuste to Monticello may be determined by that
tribunal.''

On April 28, 1930, the application of the respondent for

leave to abandon the line from Yuste to Monticello was denied by the Interstate Commerce Commission, the commission having no authority to grant a permit to abandon after an illegal actual abandonment. On July 2, 1930, this Court issued its peremptory writ commanding the respondent:

"To restore your tracks along the line of your railroad hereinbefore described as that part of your Thomasville, Georgia, Monticello, Florida Branch running from Yuste in Jefferson County, Florida to Monticello Florida, or so much thereof as has been torn up and dismantled, to maintain said tracks and road-bed over and along said above described line of railroad from Yuste, Florida, to Monticello, Florida in a reasonably safe and suitable condition reasonably adequate to meet the requirements of the public service imposed upon and accepted by you, to restore the train service over said line of railroad and to observe the train schedules that were in effect thereon prior to the said 25th day of August A. D. 1927, until permission shall have been lawfully obtained by you from the proper authority authorizing such discontinuance and abandonment, and herein fail not."

A motion "to quash, stay or modify the peremptory writ" was denied October 6, 1931. On December 22, 1931, an "amended response of obedience to peremptory writ of mandamus and discharge from further compliance therewith," was filed, averring that "the Interstate Commerce Commission has now rendered its decision and order of December 7, 1931," in which said Commission finds "that the present or future public convenience and necessity are not shown to require the construction by the Atlantic Coast Line Railroad Company of the proposed line of railroad" between Yuste and Monticello; and respondent avers that "if, notwithstanding the findings of fact made by the Interstate Commerce Commission, this Court should now compel the respondent to restore said line and service thereon, such action would

constitute the imposition of an excessive and unauthorized penalty upon respondent, and a taking of this respondent's property without due process of law" that "such action on the part of the Court would constitute a burden upon Interstate Commerce carried on by this respondent;" and "that if there was in the beginning any technical violation of law by the respondent in that it abandoned its line from Yuste to Monticello without a sufficient certificate from the Interstate Commerce Commission "then only the Federal Courts have jurisdiction * to enforce fines and penalties."

The relators move to strike the respondent's "Response of Obedience", because it does not show performance of the command of the peremptory writ of mandamus to restore the removed tracks and the service thereover, it being contended by the relators that the only permissible response to the peremptory writ of mandamus is a "certificate showing in general terms a performance of the several specific acts commanded to be done by the peremptory writ," citing Drew v. State Canvassing Board, 16 Fla. 17.

The report of the Interstate Commerce Commission, made a part of the "response of obedience," contains the following:

"BY THE COMMISSION:

By application filed on May 21, 1930, the Atlantic Coast Line Railroad Company, a carrier by railroad subject to the interstate commerce act, seeks a certificate under section 1 (18) of the act authorizing construction by it of a line of railroad from Yuste to Monticello, 4.8 miles in Jefferson County, Fla., if, in our opinion, the present and future public convenience and necessity require the proposed line to be built.

This issue is raised by reason of a situation growing out of abandonment by the applicant, without prior authorization from us, of part of a line of railroad, hereinafter called the Yuste segment, formerly extending

from Yuste, now called Alma, to and into the town of Monticello.

\* \* \* For many years the applicant had a line southward from Thomasville, through Alma, to Monticello, about 24 miles. In 1925 authority was sought and obtained for the construction of a line from a point at or near Monticello to Perry, Fla., approximately 41 miles, for the purpose of connecting existing lines in direct through routes to the Florida west coast via the Albany and Montgomery gateways. *Construction of Extension by A. C. L.*, 105 I. C. C. 209. As stated in the report cited, it was our understanding that the new line would connect the northern terminus of the applicant's Perry branch and the southern terminus of the Thomasville branch. \* \* \*

As constructed the new line did not make such connection. Because of topographic and other physical conditions, it was located along a route taking off from the Thomasville branch at Alma, 4.8 miles north of Monticello, and extending thence southward at an average distance of 1.4 miles west of the Yuste segment. A new station was established thereon at a point near the bridge by which the line crosses the main east-and-west state highway through Monticello and about 1 mile west of the town limits.

Upon completion of the new line and facilities in August, 1927, the Yuste segment was taken up and the old station in Monticello abandoned under circumstances which, although explained as the cheapest practical way, are not entirely without the implication of urgency. \* \* \*

\* \* \* Advice of this action was telegraphed to us by the intervenors on August 25, 1927, while the work was in progress. Because the applicant persisted in justifying its conduct, and in view of the exigencies of the situaton, in the absence of a determination of the facts the suggestion was made that appropriate proceedings be instituted under the act if the intervenors were convinced that the law had been violated. Mandamus proceedings were promptly instituted in the Supreme Court of Florida. Without undertaking to determine the question of public need, but holding that proper

authorization had not been obtained for abandonment of the segment, the court eventually awarded a peremptory writ ordering the applicant to restore the track and service thereover, *State* v. *Atlantic Coast Line R. Co.*, 116 So. 48 and 122 So. 256. The Supreme Court of the United States denied a writ of certiorari to review the judgment, *Atlantic Coast Line R. Co.* v. *Florida,* 281 U. S. 727.

Ostensibly the purpose of the present application is to obtain an administrative determination by us of the question of public need for construction of the line of railroad which the court has ordered the applicant to restore. Heretofore we have refused to consider this question. See previous report herein, 166 I. C. C. 570 and *Atlantic Coast Line R. Co. Abandonment*, 162 I. C. C. 497. Following reargument, however, the order of dismissal entered in this proceeding on October 11, 1930, was vacated and the application assigned for hearing. * * *

It is the applicant's contention that public convenience and necessity do not require construction of the proposed line because Monticello has adequate railroad service, the amount of traffic available is not sufficient to justify the necessary investment, and operation of the line would result in material losses. It was testified that in 1930 the applicant's return on its investment in property used in transportation service was 2.37 per cent, that there has been a recession in the rate of return since 1925, and that the trend of operation results does not warrant any capital expenditures not absolutely necessary.

The new station west of Monticello burned in May, 1930, but has been rebuilt. This station serves chiefly for the handling of local and interline passenger traffic and less-than-carload freight.

Passenger service over the Yuste segment once was performed by one mixed train daily except Sunday and one passenger train daily, in each direction. * * *

Because of declining patronage, due to general use of motor vehicles, this service eventually was reduced to one train, with passenger accommodations limited

to part of a car used also for baggage, mail, and express.

Service at the new station is performed by a mixed train operating between Thomasville and Perry, and by a through train, called the Southland, operating between Tampa, Fla., and, by means of connections, points north and west of the Ohio River. * * *

The passenger service does not seem a matter of great general concern in Monticello. From the opposing tendencies in number of passengers transported and in amounts of revenues accruing therefrom, reflected in the * statistics of passenger traffic and revenues for years before and after abandonment of the segment, it would seem that the present service is used principally in travel between Monticello and off-line points beyond Thomasville or more distant points in southern Florida.

\*    \*    \*    \*    \*    \*    \*    \*    \*

The Seaboard Air Line Railwy Company, hereinafter called the Seaboard, has a line in Florida extending westward from Jacksonville, through Drifton, to River Junction, with a short branch from Drifton to Monticello, about 4 miles. The main line is crossed by the applicant's new line. In connection with abandonment of the Yuste segment, the applicant established interchange facilities near this intersection, so that carload freight may be moved in and out of Monticello on about the same schedules and at the same rates as before. The applicant still owns a team track and other property in the town. Arrangements were made with the Seaboard to handle team-track cars and to switch cars to two industries formerly served by the applicant. Thus, to all intents and purposes, the applicant is able to handle its Monticello carload freight at the old site, and Monticello has a better rate adjudgment. * * *

During the period from January 1, 1922, to August 24, 1927, operation of the Yuste segment resulted in net railway operating deficits ranging from $647.15 in 1926 to $1,099.59 in the indicated part of 1927. In the computation of these figures revenues were allocated to the segment generally on the basis of mileage pro-

portions and operating expenses on the basis of operating ratios for the applicant's system.

Assuming that the right of way, now partly fenced and partly under cultivation, is still available, the cost of constructing the proposed line with 85-pound rails is estimated at $89,997 and of installing a wye-connection at Alma, at $9,200; total $99,197. Since the segment was taken up, State Highway No. 11, extending from the Georgia-Florida State line, through Monticello, to Capps, and a county road have been constructed in such wise as to cross the right of way above grade. This matter was suggested to the court in a motion to stay execution of the writ on the ground that compliance with the mandate thereof has been rendered impossible; it is our understanding that since the submission the motion has been overruled. Should the State highway department elect to raise the grade of the highway so as to pass over the tracks, the additional cost to the applicant would be about $7,000. Restoration of the station in Monticello would cost about $5,500.

On the basis of operation, as before, of trains from Thomasville to Monticello and return, the cost of fuel and wages, and station expense, would be about $1,750 a month, or $21,000 a pear. Apparently no advantage would be gained by looping a main-line train in and out of Monticello, either on regular schedule or as occasion might arise, although the time required for the looping movement would not exceed 25 or 30 minutes. It is contended that such trains would be delayed about three hours.

\* \* \* \* \* \* \* \* \*

The principal change in conditions effected by the abandonment is the increased distance now necessary to be traversed in reaching the new station. This has resulted in additional costs of doing business, which, if relatively small, nevertheless are considered a cause of complaint. Departure from the station involves certain hazards, the view of rapidly-moving highway traffic approaching from the east being blocked by an abutment of the applicant's overhead bridge across the

highway to Tallahassee. At least one serious accident has been due to this condition.

In general the volunteer local witnesses also have narrated personal or individual experience since abandonment of the segment. Although there was no opportunity for marshalling this testimony in advance of the hearing, a common element is conspicuous in that the applicant's practices have served rather to exasperate than to modify or appease a people already injured by illegal abandonment of a railroad.

\* \* \* \* \* \* \* \* \*

On the record as a whole, we think the applicant's contention that there is no substantial necessity for construction of the proposed line must be sustained.

Opposing counsel challenge, as inconsistent, the applicant's position with respect to its own application for authority to construct, and ask that the application be dismissed for lack of prosecution. They urge that our jurisdiction can not attach thereto for the purpose of determining the issue of fact because it has been said that a party in interest who is opposed to construction of a railroad is not authorized by the act to initiate any proceedings concerning the project. *Texas & Pac. Ry.* v. *Gulf, etc.,* 270 U. S. 266, 273. We think this language of the court clearly applies only to parties other than the carrier or carriers making application to us.

It is vigorously urged also, that having published notice of the filing of the application for authority to construct the proposed line, the people of Monticello had the right to rely on the good faith of the application and were not prepared to furnish evidence in refutation of the adverse contentions first learned of at the hearing. But counsel admit that they were not taken by surprise by the applicant's conduct at the hearing, and they did not ask or desire a continuance. In view of all the circumstances we think that no interested party has been deprived of full and ample opportunity to be heard.

As further grounds for dismissal, it is urged by counsel for the intervenors and the attorney general that it is not necessary for the applicant to obtain au-

thority from us to enable it to obey the order of the court; that we are required by the provisions of section 12 of the act to take action to remedy the illegal abandonment; that the action of the court is *res adjudicata;* that the question of public convenience and necessity is immaterial and moot; and that the application is not made in good faith but is intended to lead us into approving, indirectly, the illegal abandonment which we have heretofore refused to authorize.

\* \* \* \* \* \* \* \* \*

On behalf of the applicant it is argued with persuasive force that, thus far, the question of public need has not been considered by the court or by us. The operation of the present facilities for a period of three years since the abandonment of the former facilities, and other changes in circumstances, may justify a present finding that would not have been supported at the time this controversy arose. The jurisdiction conferred upon us by section 1 (18) of the act is to determine questions of public convenience and necessity. Such a determination is all that the present application purports to ask. It would therefore seem that we properly may proceed with this determination without in anywise impinging upon the action of the court in another proceeding, upon a different question, and under a different provision of the statute, with respect to which we have refused to make any expression.

Upon further consideration of the record, as supplemented by the evidence adduced at the hearing, we find that the present and future public convenience and necessity are not shown to require the construction by the Atlantic Coast Line Railroad Company of the proposed line of railroad in Jefferson County, Fla., described in the application. Since we have held in our previous report herein that construction in compliance with the mandate of the court would not require the issuance of a certificate of public convenience and necessity under section 1 (18) and since such a certificate could be issued only upon a showing of convenience and necessity under that provision, it follows that the application must be denied.

An order to that effect will be entered."

In Drew v. State Canvassing Board, 16 Fla. 17, the command of the peremptory writ of mandamus was absolute; and performance was not illegal or improper and would not cause confusion of governmental regulations or injustice, and would not be fruitless or nugatory or ineffectual, because of any change in conditions or otherwise, so it was there properly held that:

"There is strictly no return to a peremptory writ of mandamus. It is to be obeyed. A certificate showing in general terms a performance of the several specific acts commanded to be done, is the proper response to such writs. All other matter is surplusage and should be stricken out."

See State ex rel. v. Board, 17 Fla. 9; State ex rel. v. T. & G. R. R. Co., 78 Fla., 329, 82 So. 833; State ex rel. v. F. C. Line Canal Trans. Co., 73 Fla. 1006; 13 Enc. Pl. & Pr., 792. In this case the peremptory command is to restore the railroad tracks and to resume the service thereover "until permission shall have been lawfully obtained * * authorizing discontinuance and abandonment."

A return to a peremptory writ of mandamus "should contain merely a certificate of compliance, unless something impossible or unlawful is commanded, or such a change of conditions has taken place as to make compliance improper, in which case the facts should be stated." "The time for the return of the peremptory writ may be extended." "A protest in a certificate in response to a peremptory writ against the jurisdiction of the court will be stricken." 38 C. J. 932. The jurisdiction of the court in this cause was determined before the peremptory writ was issued. 95 Fla. 14, cited above. The Federal Transportation Act of 1920, section 1, par. 18, provides that "no carrier by railroad subject to this act shall abandon all or any portion of a line of railroad or the operation thereof, unless and until there shall first have been obtained from the Commissioners a certificate

that the present or future public convenience and necessity permit of such abandonment." The prohibitions of this section are absolute. T. & P. Ry. Co. vs. G. C. & S. F. Ry. Co. 270 U. S. 266. Section 1, par. 20, provides that any abandonment of a railroad line contrary to the provisions of the act may be enjoined by any court of competent jurisdiction; and it seems proper to assume that such authority to enjoin warrants the use of a writ of mandamus to compel the restoration of a railroad track when it is unlawfully taken up. This was perhaps recognized by the Supreme Court of the United States when it denied a writ of certiorari to the judgment of this Court awarding a peremptory writ of mandamus commanding restoration of track in this case. 281 U. S. 727. In Colorado v. United States, 271 U. S. 153, the abandonment of a local branch line operated in both intrastate and interstate commerce as a part of a system by means of connections with other railroads, was duly authorized by the Interstate Commerce Commission. See also Lawrence vs. St. L. S. Ry. Co., 278 U. S. 228.

Recognizing the dominant power of the Federal authority within its sphere, which includes authority conferred by Congress upon the Interstate Commerce Commission to determine whether the present or future public convenience and necessity require the construction and operation of a railroad line and also authority to permit the abandonment of a material part of an interstate railroad line, this Court in issuing the alternative writ herein made such writ command the abandoned service to be restored "until permission shall have been lawfully obtained by you from the proper authority authorizing such discontinuance and abandonment;" and the peremptory writ contained a similar provision.

The respondents "amended response of obedience" does not show performance of the command of the per-

emptory writ to restore, and does not show that respondent has obtained proper authority for a discontinuance and abandonment of the service commanded to be restored by the peremptory writ. The "response of obedience" does present an order of the Interstate Commerce Commission which determines that the present and future public convenience and necessity are not shown to require the construction by the respondent of the line of railroad which is commanded by the writ of this Court to be restored after it was taken up and abandoned without authority. This does not show compliance with the writ or that the writ is illegal or impossible of performance. The order of the Interstate Commerce Commission presented by the respondent shows that such a change of conditions has taken place as to make a compliance with the command of the writ cause results that would be inconsistent with the authoritative findings of the Commission, and that the present and future public necessity and convenience do not require the construction and operation of the illegally abandoned line. See A. T. & S. F. Ry. Co. v. U. S., Sup. Ct. U. S., decided January 4, 1932.

The respondent unlawfully removed the track and abandoned the service the law required it to render; but since such abandonment the conditions affecting the matter have so changed that the Interstate Commerce Commission has determined it will not authorize the construction required to comply with the restoration order of this Court, though such Commission recognized that a certificate by it of public convenience and necessity for the construction of the abandoned line, is not necessary for the enforcement of the command of this Court to restore a line of railroad unlawfully taken up and abandoned.

While this Court does not condone the illegal act of the respondent in taking up its track and abandoning the

service required by law to be rendered until abandonment be duly authorized, yet the Court cannot by mandamus enforce the penal provisions of the law, see State v. Perrine, 34 N. J. 254; and the dominant Federal authority has in effect found that present conditions affecting the subject would now make such restoration an undue financial and operative burden upon the respondent out of proportion to the public benefit to be derived from the restored service. The Interstate Commerce Commission denied a certificate of permission to abandon the line after the track had been taken up, on the ground that the commission had no authority to authorize abandonment after the line had been already illegally abandoned; but in further proceedings by the respondent, such commission has made an order refusing a certificate that public necessity and convenience "require the construction * * of the proposed line of railroad," which the writ of this court requires to be restored because illegally abandoned. It must be assumed that the respondent who here resists the enforcement of the command to restore the line of railroad, followed the law in representing facts upon its application for leave to construct, since the Interstate Commerce Commission entertained the respondent's application for authority to construct the line commanded by the writ of this Court to be restored; and the Commission made its findings and order upon testimony taken upon the question whether the public convenience and necessity required the construction of the abandoned line. The commission states that at the hearing "no interested party has been deprived of full and ample opportunity to be heard." Such findings and order though not controlling to supersede the writ of this Court, do authoritatively show that the restoration of the line is not required for the public convenience and necessity, which matter had not been considered by this Court, since under

the dominant Federal statute that finding is the province of the Interstate Commerce Commission. The findings and order of the commisson show subsequently ascertained and determined results that will follow from changed conditions, which were regarded as being possible by this Court as indicated by its opinions and by the writs as issued. Such determined results should be considered by the Court in enforcing a writ which the Court uses within its discretion to compel obedience to the law, in proper cases.

Where a writ of mandamus will create confusion in governmental regulations, the Court will exercise a sound judicial discretion to deny or to withhold the writ as may comport with law. See 38 C. J. 550, 934.

Section 1, par. 17, of the Federal Transportation Act provided that the State may "require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the (Interstate Commerce) Commission made under the provision of this law." Whatever may be its legal effect, it cannot be said that the order of the Interstate Commerce Commission denying an application for a certificate of public convenience and necessity to construct the road ordered to be restored, is not a "lawful order" of the commission within the meaning of the quoted Federal act. See Venner vs. Mich. C. Ry. Co., 271 U. S. 127.

While such order may not affect the authority of this Court to enforce obedience to its own writ, the enforcement of the writ in this case would be "inconsistent" with the order of the Interstate Commerce Commission, which order indicates that construction of the abandoned line would be unduly burdensome to the respondent, an interstate common carrier by railroad, because not reasonably required for the public benefit.

The Interstate Commerce Commission had authority to

permit the abandonment of the railroad line if appropriate application had been made to it. But the commission has no authority to ratify or to excuse an illegal actual abandonment, or perhaps to require restoration; and no authority of the commission to restore is necessary to enforce the judicial writ; yet should restoration be effected under the writ, the Interstate Commerce Commission in order to effectuate its finding and order, could within its authority immediately grant a permit to abandon the line and service, which would render the performance of the writ futile, and cause confusion in governmental regulations. Mandamus is not used when it would prove fruitless, useless or unavailing to the relators because of events occurring subsequent to the commencement of the proceedings. 38 C. J. 552.

It must be assumed that the order of the Interstate Commerce Commission dated December 7, 1931, expresses its deliberate judgment that the public convenience and necessity does not require the future maintenance of the abandoned railroad line. This being so, the Interstate Commerce Commission would have authority to give effect to its conclusion in that regard, by entering another order permitting such line and the service thereon, to be abandoned whenever the line is reconstructed and the service restored, as required by the peremptory writ of this Court.

The public has an interest in, and the Interstate Commerce Commission has authority to regulate, expenditures made in constructing, maintaining and operating common carrier interstate railroads; and the order made by such commission indicates that it does not consider the expense of restoring the railroad line and the service thereon to be justified to serve the public convenience and necessity, in view of the existing conditions affecting the matter. The line ordered to be restored is wholly

in this State, but it is a part of an interstate railroad, and it is subject to the authority of the Interstate Commerce Commission under the Federal law. See 271 U. S. 153, 244. See also Transit Co. v. U. S. Sup. Ct. of U. S., decided January 4, 1932.

The record shows that the State, the real relator here, through its State Road Department, pending the proceedings herein, constructed a highway across the land on which the railroad track would have to be relaid if the peremptory writ is enforced, at an elevation of about five feet above the former railroad track, thereby materially adding to the expense of complying with the writ as ordered. This change in conditions wrought by the State, increasing the burden of restoration, is referred to in the findings of the Interstate Commerce Commission; and though not sufficient in itself to excuse performance of the writ, yet such added expense caused by the action of the State, taken in connection with the findings and order of the Interstate Commerce Commission above referred to, becomes a material factor to be considered in determining whether the peremptory writ should now be enforced.

Conceding the authority of the Interstate Commerce Commission to permit abandonment upon restoration, to effectuate its findings and order, the reconstruction of the abandoned line, and the restoration of service over it, would be futile, and useless if enforced by this Court; and the town of Monticello in that event would still be without the line and service involved in the execution of the peremptory writ; and the execution of such writ would result in no benefit to the public insofar as the operation of the line itself is concerned. And the effect of compelling obedience to the peremptory writ under the circumstances would be to impose undue burden upon the public to the amount required to rebuild the abandoned track, in order to require the carrier to redress an

admittedly illegal act in abandoning the line without securing the proper certificate authorizing it so to do. See Taylor v. F. E. C. Ry. Co., 54 Fla. 635; Lawrence vs. St. L. S. F. Ry. Co., 278 U. S. 228.

This situation was contemplated as being possible when the writ was issued as shown by its terms. If the enforcement of the writ after the findings and order of the Interstate Commerce Commission would cause confusion in governmental regulations and also undue expenditures, some of which expenditures being caused by the State in the construction of a highway over the line, such matters should be considered in controlling the writ, notwithstanding the illegal act of the respondent in taking up its track and abandoning the service without authority. Such illegal act of abandonment cannot be penalized in this proceeding.

Treating the motion to strike the "amended response" as a challenge to its sufficiency, the response is insufficient to show obedience to the peremptory writ or that the writ is illegal or impossible of performance, or that respondent has authority to abandon the line of its railroad here in controversy.

Upon a consideration of a certified copy of the findings and order of the Interstate Commerce Commission, and in view of the confusion of governmental regulations that would probably follow the enforcement of the peremptory writ under existing conditions, and in view of the probability that restoration of the railroad line may be rendered nugatory by a Federal permit to abandon the line, as shown by the findings and order of the Interstate Commerce Commission, the Court, having control of its writs in mandamus until they are returned satisfied, in the exercise of a judicial discretion accorded to it by the law applicable in mandamus proceedings, and without formal supplemental proceedings, does hereby order and adjudge

that the peremptory writ of mandamus issued in this cause on July 2, 1930, be and is hereby recalled.

WHITFIELD, TERRELL AND BROWN, J.J., AND KOONCE, Circuit Judge, concur.

ELLIS, J., agrees to recall of the writ.

BUFORD, C.J. (Concurring specially) :—I concur in the conclusions and in the judgment. Under the Act of Congress referred to in the opinion abandonments may be *enjoined* by any Court of competent jurisdiction, but there is no authority granted in terms to courts to compel restoration by mandamus. This Court has *no* original jurisdiction in injunction proceedings and therefore I think it exceeded its jurisdiction in issuing the writ. The writ should not have been issued and therefore should be recalled.

## ON PETITION

PER CURIAM.—A petition has been filed praying that the order recalling the peremptory writ of mandamus issued in this cause be vacated and set aside. It is asserted (1) that the Court has no power or jurisdiction to recall its peremptory writ; (2) that the action of recalling the peremptory writ cannot be taken by the Court on its own motion and without notice or hearing to relators; (3) that the Court disregarded the principle of res judicata and the rights of relators in basing its order recalling the writ on matters that were fully determined otherwise in the judgment awarding the peremptory writ; (4) that the grounds upon which the Court based its order are not sound; (5) that the Court cannot ignore (a) the absolute prohibition of abandonment without authority contained in Section 1, (18) of the Interstate Commerce Act; (b) the absolute right of the relators to have the abandonment in question stopped under the provisions of Section 1 (2) of the act; (c) that this Court acquired jurisdiction of the subject matter from the act of Congress whose

purpose is to stop·the illegal abandonment of ,any part of its line by an interstate carrier.

This Court at all times has control of its writs of mandamus. Counsel for the relators fully argued here that no effect should be given to the order of the Interstate Commerce Commission with reference to the writ issued by this Court. No principle of res judicata is violated by the recall of the writ of mandamus before its execution, when there is presented to this Court an order of the Interstate Commerce Commission which is inconsistent with the enforcement. of the writ, since the Act of Congress, which the relators assert confers upon this Court its jurisdiction of the subject matter, expressly provides as stated in the former opinion that the State may ''require just and reasonable freight and passenger service for intrastate business, except in so far as such requirement is inconsistent with any lawful order of the (Interstate Commerce) Commission made under the provision of this law.''

This Court decided that the writ should issue on the showing then made, and the Supreme Court of the United States denied a writ of certiorari to such judgment. But before the writ was executed the order of the Interstate Commerce Commission that is inconsistent with the enforcement of the writ was made, and a certified copy of it was presented to this Court. The railroad track had been taken up, the line of road abandoned, and the service thereover discontinued, before the writ of mandamus was applied for; and the writ commanded the restoration of the line of road and of the service thereover, until permission shall have been lawfully obtained authorizing such discontinuance and abandonment. While the Act of Congress forbids the abandonment of any portion of its line of railroad by an interstate carrier, without a permit from the Interstate Commerce Commission, and gives relators the right to *enjoin* an abandonment contrary to

the law, yet the same law expressly provides that State authority respecting intrastate railroad service must yield to a lawful order of the Interstate Commerce Commission made under the law affecting the same matter. The track of the railroad had been taken up and the line abandoned before the writ was asked for or issued. The writ of mandamus commanded restoration and construction is necessary to restoraton. In proceedings before the Interstate Commerce Commission taken by the respondent seeking permission to construct the line of road ordered by the writ of mandamus to be restored, in which proceedings the relators and the public were given full opportunity to be heard, the Interstate Commerce Commission rendered an order holding "that there is no substantial necessity for construction of the proposed line" which had been ordered by the writ to be restored; and found upon evidence adduced "that the present and future public convenience and necessity are not shown to require the construction" of the dismantled and abandoned line of road that had been ordered by the writ to be restored. The order of the Interstate Commerce Commission denied the application for a certificate of public convenience and necessity for the construction of the line of railroad that had been taken up and abandoned and ordered restored by the judicial writ. Such order of the Interstate Commerce Commission did not ipso facto forestall the execution of the mandatory judicial writ; but the order being made under authority of the controlling act of congress, and being inconsistent with the enforcement of the writ of mandamus, the writ was properly recalled by the Court, since the paramount law provides that the State may require just and reasonable intrastate railroad service "except in so far as such requirement is inconsistent with a lawful order of the Commission;" and such an order when made cannot be reviewed by the State Court. The making of the order by the Interstate Com-

merce Commission under the dominant Act of Congress is the assertion of the paramount Federal authority, to which the exerted State authority operating upon the same subject should yield on its own initiative in order to avoid confusion of governmental regulations and in recognition of the dominant Federal authority in the premises. If the order of the Interstate Commerce Commission is not a ''lawful order'' that must be determined by the Federal Courts and not by the State Courts. Venner v. Mich. C. R. Co., 271 U. S. 127.

The recall of the writ comports with other considerations referred to in the former opinon. Even if there be no exact precedent for recalling the peremptory writ, the dominant Federal authority in the premises is asserted under a recent controlling Federal statute, and the discretionary writ of mandamus should be used to give effect to and not to operate in conflict with orders made under the authority of the paramount law as and when such orders are promulgated. When the writ was issued, its enforcement was made contingent upon the making of an inconsistent order in the premises by the dominant Federal authority. Such an order has been made.

Petition denied.

BUFORD, C.J., AND WHITFIELD, TERRELL AND BROWN, J. J., AND KOONCE, Circuit Judge, concur.

ELLIS, J., concurs specially.

DAVIS, J., disqualified.

ELLIS, J.—I agree to an order denying the petition, but for reasons expressed by me heretofore.