**Theodore C. MEEKER et al., Plaintiffs,**

**v.**

**Edward M. STUART et al., Defendants.**

**No. 1149-58.**

United States District Court
District of Columbia.

Oct. 21, 1960.

John L. Ingoldsby, Jr., Washington, D. C., for plaintiffs.

J. Robert Carey, Washington, D. C., for defendants.

HOLTZOFF, District Judge.

This is an action for an injunction and damages based on alleged interference with the good will of a business in which the defendant sold an interest to the plaintiff, and based further on an alleged violation of an employer-employee relation. The defendant counterclaims first, for balance due on a promissory note given by the plaintiff to the defendant, and second for damages claimed to have been caused by a preliminary injunction heretofore issued by another Judge of this Court, and later reversed by the Court of Appeals for this Circuit.

The plaintiff, Theodore C. Meeker, was the manager of the air-conditioning department of a concern doing business in this city, known as the Griffith-Consumers Company. He had been employed in that capacity for a number of years. The defendant was a minor employee of a country club of which the plaintiff was a member. Through this contact the defendant secured employment from the plaintiff as a salesman in the department

headed by the plaintiff in Griffith-Consumers Company. This was some time in 1953.

Some time in 1955 or 1956 Griffith-Consumers Company determined to discontinue their air-conditioning department and to go out of the air-conditioning business. Griffith-Consumers suggested to the plaintiff that he take over the business in the air-conditioning field heretofore conducted by Griffith-Consumers, and accordingly turned it over to him without charging any compensation, but merely in recognition of the fact that he had been a trusted employee for a considerable period of time. In fact Griffith-Consumers paid the plaintiff for carrying out the warranties on contracts that it had previously made with its customers. The plaintiff conducted his business under the trade name of Tri-State Engineering Company.

In view of the discontinuance of its air-conditioning department by Griffith-Consumers, the defendant would have been out of employment. The plaintiff was willing to employ him and to take him into the business that he was initiating. The plaintiff made the defendant a partner in the business and gave him a 25 per cent interest in it. Apparently there was no formal contract of partnership between the two men, but the agreement forming the partnership was oral. The concern prospered and in the very first year the gross amount of the business done by Tri-State Engineering Company was about $185,000. This business was divided into three types. One was the sale of air-conditioning equipment. The second was servicing air-conditioning equipment, pursuant to contracts made for that purpose. The third was servicing air-conditioning equipment without any contract, but from time to time as the plaintiff was called upon to do by his customers. A large number of customers were acquired by the plaintiff, as appears from lists that have been introduced in evidence.

Apparently the plaintiff and the defendant soon disagreed and decided to part company. On November 27, 1957 the defendant sold his 25 per cent interest in the business to the plaintiff for the sum of $2,000, and as part of the arrangement the plaintiff employed the defendant on a part-time basis at a salary of $800 per month for a period of two years. To secure this payment the plaintiff gave the defendant a note for $19,-200 payable in 24 equal monthly installments of $800 each, commencing on December 1, 1957. In turn this note was secured by a chattel mortgage.

The defendant then started a competing business in the same field. He sent a letter of solicitation to persons on the list of the plaintiff's customers who had no contracts with the plaintiff but whom the plaintiff considered his customers. The testimony shows that such a letter was sent to all of the customers on that list with the exception of about 40 names. It further appears that the defendant made other efforts to solicit the business of some of the plaintiff's customers with whom the plaintiff had no contracts. It was shown specifically that as a result of his activities the defendant was able to secure the business of Page Communications Company, which apparently was one of the large customers of the plaintiff, as well as that of International Business Machines. Other concerns were solicited, whose business was lost by the plaintiff; but there was no showing that such business was transferred to the defendant.

This summary of the evidence and the facts brings the Court to a consideration of the legal rights of the parties. Primarily they are based on the contract contained in a letter of November 22, 1957. The letter reads as follows:

"By this letter it is agreed by the undersigned Edward M. Stuart, in consideration of the sum of $2,000 paid by you, Theo. C. Meeker, in satisfaction of the acquisition by you of my, Edward M. Stuart's 25 per cent interest in the Maryland partnership, Tri-State Engineering Company, that I, although engaging in the airconditioning business in the metropolitan area, will not interfere in the conduct of your personal busi-

ness, nor with the contracts presently in existence between Tri-State Engineering Company and the contract account customers of Tri-State Engineering Company for a period of two years from the date hereof.

"In addition to the above matter, I, Edward M. Stuart, agree to remain in the employ of the Tri-State Engineering Company on a part-time basis at a salary of $800 a month, which employment and the payments due thereunder shall be secured by duly executed note."

As has been stated, such a note was executed and secured by a chattel mortgage. Four payments were made on the note, but subsequent payments were discontinued because of the activities of the defendant that have been heretofore summarized.

The above agreement was a sale by the defendant to the plaintiff of the defendant's 25 per cent interest in the business of the partnership. Necessarily it meant the sale of a 25 per cent interest in all of the assets of the partnership. Assets of a business are not limited to its tangible property or its lease, but necessarily include good will. In fact, very frequently good will is the most important asset of a business, and this is especially true of a business that furnishes service instead of selling merchandise. What is good will? Good will may be defined as the habit of customers to return to the concern with which they have been previously dealing. The more ingrained the habit, the greater the number of such customers, the more valuable is the good will.

If a person selling his share of the assets of a business—which assets necessarily include good will—seeks to solicit customers to return to him, he is trying to secure a return of the very asset that he has sold and is therefore violating the rights of the vendee. This was held in Acker, Merrall & Condit Co. v. McGaw, C.C. 144 F. 864. It is argued in behalf of the defendant, however, that this contract should not be construed as a sale of

the defendant's interest in the good will, because it limits the defendant expressly to not interfering in the conduct of the plaintiff's personal business, with the contracts presently in existence between Tri-State Engineering Company, and with the contract account customers of Tri-State Engineering Company. It is argued that these expressions exclude those customers of Tri-State Engineering Company which did not have contracts with it. The Court does not agree, for a number of reasons.

First, there is a pledge on the part of the defendant not to interfere in the conduct of the plaintiff's personal business. It is clear that the only personal business that the plaintiff had was the air-conditioning business, and therefore the defendant was expressly undertaking not to interfere with that business. Moreover, the maxim of statutory construction, *expressio unius est exclusio alterius*, does not necessarily apply to the construction of informal contracts such as this. The Court is inclined to the view that the clause against interference with contract customers was inserted more in the nature of emphasis than for the purpose of granting permission to the defendant to interfere with non-contract customers.

There is, however, another and equally potent theory on the basis of which the conclusion is reached that the defendant violated the plaintiff's rights. For a period of two years, beginning December 1, 1957, there was an employee and employer relationship between the plaintiff and defendant established by contract. The defendant was to receive substantial compensation in the amount of $800 a month during that period, for part-time services. It is a violation of a contract of employment for an employee to solicit business for himself or anyone else from his employer's customers.

In the light of these considerations the Court reaches the conclusion that the plaintiff has established a cause of action against the defendant.

It is, however, urged that the plaintiff is not the real party in inter-

est, because subsequently to the execution of the contract of November 22, 1957, the plaintiff organized a corporation and therefore, it is urged, the corporation would be the real party in interest. This argument, of course, is based on very much of a technicality. Actually there is no proof that the organization of the corporation was completed or that the assets and business of the plaintiff as an individual were conveyed to the corporation. Consequently the contention that the plaintiff is not the real party in interest is overruled.

■■ We now reach the question as to what relief should be awarded. Although the plaintiff has established his right to an injunction, as of the proper time, nevertheless, since the two-year period referred to in the agreement has expired, no permanent injunction should be issued, for that reason and solely for that reason, and the plaintiff's relief must be limited to damages. Considering the amount of damages to be awarded, it must be borne in mind that the Court has the same discretion as a jury. It is a well established principle that while the fact of damages must be established definitely, the amount need not be proven mathematically. Otherwise in cases of this kind the plaintiff might find himself with but an empty victory and the defendant without any obligation to make good the plaintiff's loss. As was said in Hedrick v. Perry, 10 Cir., 102 F.2d 802, 807, by Circuit Judge Bratton of the Tenth Circuit, "It is enough if the evidence adduced is sufficient to enable the court or jury to make a fair and reasonable approximation". In that case, which was somewhat similar to the case at bar, the plaintiff was allowed to recover an approximate amount of the profits that he might have realized on business which the defendant caused to be deflected from the plaintiff.

■ In this case the evidence shows that the plaintiff as a result of the defendant's activities lost to the defendant the business of at least two of his customers, International Business Machines and Page Communications. In 1958 Page Communications Company had occasion to place $8,000 worth of business for the purchase of air-conditioning equipment and about $500 worth of business for servicing such equipment. In 1959 Page Communications purchased from the defendant between $55,000 and $60,000 worth of equipment. The testimony shows that the net profit on equipment sales realized by the plaintiff was about 10 per cent, and the normal profit on service and repairs about 30 per cent. Thus, the approximate loss of profits to the plaintiff was about $6,000 in these transactions.

Turning to the International Business Machines, the defendant admitted that he did between $6,000 and $8,000 worth of business with that concern in 1959. Assuming a ten per cent profit on this business, the amount of loss on this item would approximate $800.

Accordingly the Court will award damages in the amount of $6,800.

■ Since the consideration for the note has failed, because the breach of the employer-employee relationship went to the very essence of the contract, the Court will also adjudicate that there is no further liability on the note involved in this case and the note should be delivered up and cancelled.

This conclusion necessarily disposes of the counterclaim, because the Court holds that there is no further liability on the note.

■ As to damages on the injunction bond, it is well established that there can be no recovery of damages caused by a preliminary injunction, even if the injunction is set aside, unless final judgment after trial is in favor of the party that has been enjoined. Lawrence v. St. Louis-San Francisco Railway Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L.Ed. 282; Janssen v. Shown, 9 Cir., 53 F.2d 608, 610; Alabama Mills v. Mitchell, D.C., 159 F.Supp. 637, 639. This rule has also been applied by State courts, Rose v. Martin, 308 Ky. 661, 215 S.W.2d 579, 580; Meth-

odist Churches of New York v. Barker, 18 N.Y. 463, 465.

Accordingly the counterclaim will be dismissed.

The transcript of this oral decision will constitute the findings of fact and conclusions of law. Counsel will submit an appropriate judgment.