DONNELLY GARMENT CO. et al. v. INTERNATIONAL LADIES' GARMENT WORKERS' UNION et al. (DONNELLY GARMENT WORKERS' UNION et al., Interveners).

No. 2924.

District Court, W. D. Missouri, W. D.

Feb. 14, 1944.

See also 47 F.Supp. 61; 41 F.Supp. 67.

James A. Reed, Robert J. Ingraham, and William S. Hogsett, all of Kansas City, Mo., for plaintiffs and the surety.

Emil Schlesinger, of New York City, Charles A. Horsky, and John T. Sapienza, both of Washington, D. C., and Clifton Langsdale, of Kansas City, Mo. (Covington, Burling, Rublee, Acheson & Shorb, of Washington, D. C., of counsel), for defendants.

Frank E. Tyler and Lucian Lane, both of Kansas City, Mo., for interveners.

NORDBYE, District Judge. (Acting under special assignment to the Western District of Missouri.)

The factual background has been so frequently stated in prior decisions that no further recital seems necessary in this proceeding. Suffice it to say that on July 5, 1937, plaintiffs instituted this suit to enjoin the defendants from certain acts allegedly done or threatened in furtherance of a conspiracy to destroy plaintiffs' interstate trade or commerce in violation of the anti-trust laws of the United States. A restraining order was issued on July 5, 1937. A motion to dismiss the bill and to vacate the restraining order was denied on August 13, 1937. D.C., 20 F.Supp. 767. A subsequent motion was made to dismiss the bill and to vacate the restraining order, which motion, together with an application for a temporary injunction, was referred to a three-judge court. The motion to dismiss was denied, and a temporary injunction was issued by the three-judge court on December 31, 1937 (D.C., 21 F.Supp. 807), which injunction was vacated by the Supreme Court of the United States on May 16, 1938 (304 U.S. 243, 58 S.Ct. 875, 82 L.Ed. 1316) for lack of jurisdiction, and on July 18, 1938, the restraining order of July 5, 1937, was continued with modifications during the appeal from an order of this court wherein the bill of complaint was dismissed (D.C., 23 F.Supp. 998). The order dismissing the bill of complaint, however, was reversed by the Circuit Court of Appeals on January 28, 1939. 8 Cir., 99 F.2d 309. The matter went to trial on its merits, and on April 26, 1939, a permanent injunction was issued. On August 29, 1941, the latter decree was vacated for want of jurisdiction (8 Cir., 119 F.2d 892), but the court on rehearing (8 Cir., 121 F.2d 561) permitted the plaintiffs to apply to the trial court for leave to dismiss as to the resident defendants and to retain jurisdic-

tion on the grounds of diversity of citizenship as against the remaining defendants. This procedure was followed and the court permitted the dismissal and retained as defendants the non-residents against whom the action proceeded to trial de novo. D.C., 47 F.Supp. 61; Donnelly Garment Co. v. Dubinsky, D.C., 47 F.Supp. 65. As of this date, the Court has filed its decision denying any injunctive relief to the plaintiffs and the interveners as against the remaining defendants. The application for assessment of costs, expenses and attorneys' fees, however, is lodged in the original Sherman anti-trust action.

We commence, therefore, with the premise that all of the restraining orders and injunctions were erroneously issued because at no time did the court have jurisdiction. The decision of the court on August 29, 1941, finally determined that the Sherman Act did not vest jurisdiction in the court and hence any injunctive orders which had been issued were void. Bonds were required as a condition for the issuance of the temporary restraining order of July 5, 1937, in the sum of $2,000; for the issuance of the three-judge court temporary injunction of December 31, 1937, in the sum of $10,000; and for the continuation with modifications of the original restraining order of July 18, 1938, in the sum of $25,000. The Central Surety Company was surety on the three bonds mentioned. No bond was required in connection with the issuance of the permanent injunction. The plaintiffs, interveners and surety have answered and have raised no objection to the jurisdiction of this Court to determine the liability of the principals and the surety on the respective bonds in the original proceeding. The power of this Court to determine in this proceeding the question of liability on the bonds and to assess the amount of damages is recognized by Tullock v. Mullvane, 1901, 184 U.S. 497, 22 S.Ct. 372, 46 L.Ed. 657; Meyers v. Block, 120 U.S. 206, 7 S.Ct. 525, 30 L.Ed. 642; Russell v. Farley, 105 U.S. 433, 26 L.Ed. 1060.

In that three separate bonds are involved, it becomes necessary to discuss and consider the liability and scope of each bond. No damage other than costs, expenses and attorneys' fees in connection with the litigation are claimed. Defendants contend, however, that such damages, that is, costs and expenses and attorneys'

fees, aggregate $102,913.57. These expenses were all paid by the International Ladies' Garment Workers' Union, as to which a dismissal was entered by the plaintiffs and interveners in pursuance of the permission granted by this Court. It is defendants' position that the surety is jointly liable with both plaintiffs and interveners for $37,000, the aggregate amount of the bonds; that the plaintiffs are liable for the full amount claimed; and in that the interveners did not become parties to this proceeding until September 23, 1937, and appear as principals only on the $10,000 and $25,000 bonds, their liability is computed to be $97,055.52. It fairly appears from the evidence that the sum of $102,-913.57 was actually spent by International for expenses and attorneys' fees in connection with the litigation which was pending between the parties from July 5, 1937, until the Fall of 1941. In view, however, of the disposition of the application herein, the Court does not determine whether all of the expenses and attorneys' fees were necessary or reasonable.

It was on July 5, 1937, that this court, through Judge Otis, granted to plaintiffs a temporary restraining order as prayed returnable in five days, conditioned upon the filing of a bond in the sum of $2,000, to "pay such costs and damages as may be incurred or suffered by reason of the wrongful issuance of said restraining order or injunction." A bond in accordance therewith was filed conditioned for the payment of "all such costs and damages as may be incurred or suffered by reason of the wrongful issuance of said restraining order or injunction should it be thereafter dissolved or it be decided that said temporary restraining order was wrongfully obtained." It will be noted that neither the order of the court nor the provisions of this bond provided that any attorneys' fees or expenses should be secured. The condition of the bond is limited to "costs and damages" incurred or suffered. Furthermore, there is no provision in the bond which in any way secures the defendants for any costs and damages occasioned by any defense against the granting of any other injunctive relief sought in the same proceeding and which thereafter was denied. The broad provisions and undertaking as will be found in Section 7 of the Norris-LaGuardia Act, 29 U.S.C.A. § 107, are not included. The pertinent portion of this section in this regard reads:

"No temporary restraining order or temporary injunction shall be issued except on condition that complainant shall first file an undertaking with adequate security in an amount to be fixed by the court sufficient to recompense those enjoined for any loss, expense, or damage caused by the improvident or erroneous issuance of such order or injunction, including all reasonable costs (together with a reasonable attorney's fee) and expense of defense against the order or against the granting of any injunctive relief sought in the same proceeding and subsequently denied by the court."

The reasons for the variance between the provisions of the $2,000 bond and a bond required by the Norris-LaGuardia Act are evident. When this suit was commenced, plaintiffs did not assume to frame the bill of complaint under the Norris-LaGuardia Act. They took the position that a labor dispute was not involved; that there was no controversy between the employer and the employees as to wages, working conditions, or any other controversy. They asserted that the International and the individual defendants were mere interlopers carrying on a campaign to destroy the business of the plaintiffs by fraud, violence and secondary boycott. When the temporary restraining order of July 5, 1937, was issued, the court in construing the bill of complaint agreed that a labor dispute did not exist and therefore issued a temporary restraining order without requiring plaintiffs to meet the conditions precedent as outlined in the Norris-LaGuardia Act relative to the court's jurisdiction in granting a restraining order in a labor dispute. It is very clear, therefore, that the $2,000 bond which the court required was not the type of bond which was mandatory under the Norris-LaGuardia Act, but rather a bond which complied with the provisions of the Clayton Act, the pertinent portion of which reads:

"Except as otherwise provided in section 26 of Title 15, no restraining order or interlocutory order of injunction shall issue, except upon the giving of security by the applicant in such sum as the court or judge may deem proper, conditioned upon the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained thereby." 28 U.S.C.A. § 382.

Moreover, that the court, in granting the restraining order and requiring the particular form of bond to be issued, was of the opinion that a labor dispute did not exist as to the issues which were set forth in the bill of complaint, is substantiated by the court's order of August 13, 1937 (20 F. Supp. 767), wherein the court in refusing to dismiss the bill and to vacate the temporary restraining order stated (page 772):

"It follows from what we have thus far said that, even with the very broad interpretation of the phrase 'labor dispute' which section 13 of the act requires, we do not have here upon the present record a 'labor dispute.' The bill then should not be dismissed nor should the restraining order which has been issued be dissolved."

The court did recognize, however, that the trial of the action might indicate that the true nature of the controversy was not as depicted by the bill, and that in truth and in fact a labor dispute did exist and in that event the bill would have to be dismissed and the restraining order dissolved. But the record is clear that, at the time the $2,000 bond was ordered and at the time the court refused to dismiss the bill and to dissolve the restraining order, it unequivocally held that, on the bill of complaint, there was no labor dispute.

After the court refused to dismiss the bill and to vacate the temporary restraining order, it used the following language: "It is further ordered, the defendants-movants consenting thereto, that the restraining order shall continue in effect until the application for a temporary injunction shall have been ruled." (Judge Otis' order of August 13, 1937, not published.) As stated, the motion for a temporary injunction was referred to a three-judge court. This court had been convened at the defendants' suggestion, in that it was assumed by them that the Act of August 24, 1937, 28 U.S.C.A. § 401, required a hearing before a three-judge court. The reasons which prompted the defendants to so move were as follows: The interveners herein filed their bill of intervention and were allowed to intervene on September 23, 1937. These interveners consisted of certain representatives of the Donnelly Garment Workers' Union, a so-called independent union, and for themselves and other employees they sought the same relief, together with certain addi-

tional relief, as was prayed for in the original bill. They also contended that a labor dispute did not exist, but they did aver that if the Norris-LaGuardia Act was applicable to the controversy, then it was unconstitutional. The Act of August 24, 1937, provided that, if the constitutionality of any Federal statute was challenged in any proceeding and the provisions thereof were sought to be stayed because of such alleged unconstitutionality, a three-judge court should have exclusive jurisdiction to hear and determine the application, and it was further provided that an appeal from the order of the three-judge court could be taken direct to the Supreme Court of the United States. The injunction requested in the instant proceeding, however, did not seek to stay the effect of the statute, but only to stay the acts of certain individuals. It was assumed, however, by the defendants that the three-judge court had jurisdiction to hear the application for a temporary injunction which sought to restrain the defendants from acts and threats of violence, fraud and secondary boycott, because in that proceeding the constitutionality of a Federal statute was at least conditionally challenged. It may be gathered from the record that no objection was lodged by the plaintiffs or interveners to the court's jurisdiction. After a hearing, the three-judge court on January 7, 1938, refused to dismiss the bill and entered a decree enjoining the defendants from committing or threatening the acts complained of in the bill, and held that the Norris-LaGuardia Act did not apply to the proceeding. This specifically appears from the court's language when it stated (page 814 of 21 F.Supp.): "The Norris-LaGuardia Act has no application to the controversy herein presented. In such case, jurisdiction being clear, courts of equity will grant relief in accordance with their inherent powers and established procedure." Moreover, it appears from the decree filed by the three-judge court that it was proceeding in accordance with Equity Rule 70½, 28 U.S.C.A. § 723, Appendix. The decree required that the plaintiffs and the interveners file a $10,000 injunction bond in the following language:

"3. That the temporary injunction granted by paragraph 2 of this decree is upon condition that plaintiffs and interveners execute a bond to defendants, in form and with security to be approved by this court, in the sum of Ten Thousand ($10,000) Dollars, conditioned for the payment of such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained by such temporary injunction, if it be finally held that said temporary injunction was improvidently granted."

The bond approved by the court was conditioned on the payment by plaintiffs and interveners of "such costs and damages as may be incurred or suffered by any party who may be found to have been wrongfully enjoined or restrained by said temporary injunction if it be finally held that said temporary injunction was improvidently granted, * * *." The decree and the bond became effective as of December 31, 1937. It is very evident, therefore, that the $10,000 bond was ordered by the court to comply with the Clayton Act rather than the Norris-LaGuardia Act.

The defendants took an appeal to the Supreme Court, which on May 16, 1938, dismissed the appeal because the three-judge court had no jurisdiction. It was held that the Act of August 24, 1937, did not apply because the applicants were not seeking to stay the effect of any Federal statute, but were merely seeking to restrain certain individuals from committing certain acts, and although the constitutionality of a Federal statute might be involved, the controversy did not come within the purview of the statute which required a three-judge court to assume jurisdiction. Therefore, the appeal was dismissed, and the court concluded by stating (page 251 of 304 U.S., page 880 of 58 S.Ct., 82 L.Ed. 1316):

"* * * As appellants by mistakenly appealing directly to this Court have lost their opportunity to have the decree reviewed on its merits, as the time for appeal to the Circuit Court of Appeals has expired, our appropriate action, without passing upon the merits, is to vacate the decree below and to remand the cause to the District Court for further proceedings to be taken independently of section 3 of the Act of August 24, 1937."

Shortly after the Supreme Court dismissed the appeal and vacated the temporary injunction, plaintiffs amended their bill of complaint and for the first time assumed to set up the necessary allegations required under the Norris-LaGuardia Act as a condition precedent to the granting of injunctive relief. Apparently, by reason of certain recent decisions of the Supreme Court, plaintiffs recognized that the con-

troversy between them and the defendants constituted a labor dispute and that the Norris-LaGuardia Act was applicable. After the bill was amended, the defendants moved to dismiss and to vacate the restraining order. It may be doubted that there was any restraining order in effect except as the parties may have informally agreed thereto among themselves. The court in its order of August 13, 1937, merely continued the restraining order with the consent of the defendants until the hearing on the application for the temporary injunction. It is to be assumed, therefore, that the temporary restraining order ended with the entry of the three-judge decree. However, in defendants' motion, they sought a dismissal of the amended bill and the vacation of the restraining order. This matter came before Judge Collet. On July 18, 1938, the court dismissed the amended bill because of plaintiffs' failure to comply with one of the conditions precedent required under the Norris-LaGuardia Act. The court, however, granted a modified restraining order provided an appeal was perfected within a stated period, the order stating:

"* * * and the said temporary restraining order heretofore issued herein on the 5th day of July, 1937, is, upon application of plaintiffs and interveners, continued, and the same, pending appeal, modified to read as follows: * * * and as so modified, the temporary restraining order aforesaid is hereby continued in full force and effect, pending the appeal of this cause, provided such appeal is perfected by plaintiffs and interveners within thirty days from the date of this decree, and provided said appellants file bond herein, with good and sufficient surety as hereinafter provided. This temporary restraining order is upon condition that a bond be filed by plaintiffs herein in the sum of $25,000, conditioned that plaintiffs pay such costs, damages and expenses, including attorneys' fees, as may be incurred or suffered by reason of the improvident or erroneous issuance of said restraining order."

The bond filed provides that plaintiffs pay "all costs, damages, and expenses, including attorneys' fees, suffered by defendants or any of them by reason of the improvident or erroneous issuance or continuance of said restraining order."

It should be noted, first, that the bond did not embrace the broad provision of Section 7 regarding security to be afforded for costs, expenses, etc., occasioned by any necessary defense to other applications for injunctive relief in the same proceeding; second, that the bond required the principal to pay all costs, damages and expenses, including attorneys' fees, suffered not only by reason of the court's continuance of the restraining order of July 5, 1937, as modified, but also by·reason of the issuance thereof; and third, the continuance of the restraining order as modified was to continue only during the pendency of the appeal.

An appeal was taken from the court's order dismissing the bill. The Circuit Court of Appeals reversed and remanded the case for trial. Its mandate was filed January 28, 1939, and according to the order of the court continuing the restraining order, it would seem that, upon the filing of the mandate, the restraining order ended. However, notwithstanding the apparent limitation as to the continuance of the restraining order issued by the court, the defendants on February 7, 1939, filed a motion to vacate the modified restraining order issued as of July 18, 1938, on the grounds that certain conditions precedent as required by the Norris-LaGuardia Act had not been complied with. On March 3, 1939, Judge Collet filed his order, and it appears from the recitals therein that the plaintiffs contended that the restraining order was in effect because of an agreement between the parties made some two years prior thereto. It appears that it was plaintiffs' contention that the parties had agreed that the restraining order should continue in effect until the application for the temporary injunction was finally ruled, which· event, according to plaintiffs, had not as yet occurred. It is to be assumed that the plaintiffs contended that the action of the three-judge court in granting the temporary injunction was not a ruling thereon, in that the court was without jurisdiction to determine the merits of that question. Defendants, however, disputed plaintiffs' contention and asserted that any agreement made regarding the continuance of a restraining order was limited to the time when it had been adjudicated that the Norris-LaGuardia Act was applicable to the proceeding. The court did not assume to pass upon or construe any agreement between the parties. It merely held that the Norris-LaGuardia Act applied and under that Act any restraining order of the "character under discussion shall become

void at the expiration of five days from its issuance. That time has long since passed and this court clearly has no power to enforce an agreement which, as construed by plaintiffs, is contrary to the express provisions of the applicable law." (Judge Collet's order filed March 3, 1939, not published.) It held, therefore, that there could be no outstanding restraining order for the court to pass upon, for the restraining order had ceased to exist by operation of law. It is quite apparent, therefore, that the court considered and determined that the continuance of the restraining order which it granted during the pendency of the appeal had expired by the very conditions of its order, and if it was assumed that there was any vitality to the court's order of July 5, 1937, the defendants were in error because such order had expired long prior to the filing of defendants' motion to vacate.

It seems, therefore, that the pendency of the restraining orders and temporary injunction issued in the proceeding is as follows: The restraining order of July 5, 1937, continued in effect to December 31, 1937. The temporary injunction granted by the three-judge court continued from December 31, 1937, to May 16, 1938. The so-called continuance of the original restraining order, with modifications, existed from July 18, 1938, to January 28, 1939.

 The question then arises as to the recovery which may be permitted under these bonds. As heretofore stated, no damages other than expenses and attorneys' fees are sought. It is recognized by all parties hereto that, prior to the adoption of the Clayton Act and the Norris-LaGuardia Act, the Federal decisions were uniform in holding that attorneys' fees incurred are not recoverable on an injunction bond. Oelrichs v. Spain, 15 Wall. 211, 82 U.S. 211, 231, 21 L.Ed. 43; Tullock v. Mullvane, 184 U.S. 497, 511, 22 S.Ct. 372, 46 L.Ed. 657; Missouri, Kansas, etc., R. Co. v. Elliott, 184 U.S. 530, 539, 22 S.Ct. 446, 46 L. Ed. 673; Sullivan v. Cartier, 9 Cir., 147 F. 222; In re Hines, D.C., 144 F. 147. Furthermore, the weight of authority in the Federal courts indicates that costs and damages in excess of the maximum amount of the bonds could not be recovered. United Motor Service v. Tropic-Aire, 8 Cir., 57 F.2d 479, 482; Russell v. Farley, 105 U.S. 433, 437, 26 L.Ed. 1060; Meyers v. Block, 120 U.S. 206, 211, 7 S.Ct. 525, 30 L.Ed. 642; Lawrence v. St. Louis-S. F. R.

Co., 278 U.S. 228, 233, 49 S.Ct. 106, 73 L. Ed. 282. It may also be noted that, after the adoption of the Clayton Act, it has been held that this statute "must be construed in light of the definition which the Supreme Court had previously given to similar language in injunction bonds exacted by the courts in the exercise of discretion." Salvage Process Corp. v. Acme Co., 2 Cir., 104 F.2d 105, 107. But defendants urge, first, that these three bonds must be construed as if the provisions of Section 7 of the Norris-LaGuardia Act were incorporated therein; second, that there is an unlimited undertaking on the part of the complainants herein regardless of the principal amount of the bonds to secure the defendants against all costs, damages, expenses and attorneys' fees occasioned by the issuance of the injunctive orders in this proceeding and occasioned by their defense to any and all applications for injunctive relief including the defense to the application for and the steps taken to vacate the permanent injunction entered herein. We are confronted with the fact, however, that as to the $2,000 and $10,000 bonds, at least, the court did not intend to require the complainants to file a bond in pursuance of the Norris-La Guardia Act, but purposely required a bond under the Clayton Act. To attempt, therefore, to read into these two bonds any statutory provisions of Section 7 would do violence to the real purpose and intent of the court in exacting them from the complainants. In construing these contracts, the Court should endeavor to give effect to the intention of the parties, and it cannot be controverted that the purpose was to furnish a bond in conformance with the Clayton Act. If any error was made in regard to the scope of the bond and its appropriateness to the relief sought, it was the court's error and not attributable to these complainants. The latter did that which the court required of them, and while they were also mistaken in the character of the controversy which was to ensue, their good faith in assuming the position they did is not seriously controverted. It is highly significant that at no time did these defendants challenge the amount, the scope of the coverage, or the appropriateness of the forms of these bonds which were filed in this proceeding. No steps were ever taken to dissolve or vacate any restraining order or injunction because of the character of the bonds which were furnished. Any limitation in the scope of coverage or any inadequacy in the amount

of these bonds has clearly been waived by the defendants.

■ It may be observed that there is no particular innovation in the provisions of Section 7 of the Norris-LaGuardia Act in so far as it pertains to bonds required in injunction proceedings, except the inclusion of expenses and attorneys' fees as an element of damage and the provision which requires that any and all bonds furnished be sufficiently comprehensive so as to embrace the costs, damages, expenses and attorneys' fees resulting from the opposition to applications for injunctive relief in the same proceeding and which are subsequently denied. It is fair to assume that Congress did intend that, before complainants in labor disputes could obtain injunctive relief, they would be required to file an undertaking in an amount set by the court to secure the payment of damages of this scope and character. But the statute is not self-executing. If, by the application for injunctive relief, a complainant obligates itself for all damages caused by the application if subsequently denied, or all damages caused by the defense to any order improvidently or erroneously issued, the statute would have been so framed. If Congress had this intention, it probably would have promulgated a statute to read something like this: "The complainant shall be directly liable to the defendant for all costs and damages, including expenses and attorneys' fees, caused by the application for any injunction if subsequently denied or by reason of the defense against any injunctive order if erroneously or improvidently granted." Instead, Congress indicated that complainants' liability should be reflected in an undertaking to be filed—with adequate security—in an amount to be fixed by the court. There would be no occasion for the requirement that an undertaking should be filed if Congress intended that the statute should in some way be self-executing. It is plain, therefore, that there is but one undertaking contemplated by this statute and that undertaking is to be secured by a bond in such amount as the court may determine. This construction is substantiated by the provisions of the succeeding paragraph of Section 7 of the Act, which outlines the procedure which may be followed when recovery is asserted against plaintiffs. There, the scope of the term "undertaking" is clearly indicated as the bond filed by the complainant as principal with the se-

curity as required by the court. The paragraph reads:

"The undertaking mentioned in this section shall be understood to signify an agreement entered into by the complainant and the surety upon which a decree may be rendered in the same suit or proceeding against said complainant and surety, upon a hearing to assess damages of which hearing complainant and surety shall have reasonable notice, the said complainant and surety submitting themselves to the jurisdiction of the court for that purpose. But nothing in this section contained shall deprive any party having a claim or cause of action under or upon such undertaking from electing to pursue his ordinary remedy by suit at law or in equity."

■ Certainly, Congress must have intended that every complainant should at least be advised of his maximum liability before he sought to obtain any injunctive relief. If defendants' position is sound, then even though in a labor dispute the court should not require a bond as a condition for issuing an injunction, the complainant would be obligated notwithstanding to pay all costs and damages in an unlimited amount. Such a view seems wholly untenable and is unquestionably contrary to the teachings of well-considered Federal authorities which have passed upon similar questions. In absence of malicious prosecution, the weight of the Federal authority is clear that no damages can be recovered in an injunction proceeding in absence of a bond. 10th Ward Rd. Dist. v. Texas & P. Ry. Co., 5 Cir., 1926, 12 F.2d 245, 45 A.L.R. 1513; Minneapolis, St. P. & S. S. M. Ry. Co. v. Washburn Lignite Coal Co., 1920, 254 U.S. 370, 41 S.Ct. 140, 65 L.Ed. 310; United Motor Service v. Tropic-Aire supra; see, also, Lawrence v. St. Louis-San Francisco Ry. Co., 1929, 278 U.S. 228, 49 S.Ct. 106, 73 L.Ed. 282.

■ While the court in its order of July 18, 1938, in effect continued the restraining order with modifications and required a bond which included provisions with reference to expense and attorneys' fees as damages to be secured by the bond, it is quite apparent that the court intended to do nothing more than to maintain the restraining order in effect during the pendency of the appeal; that is, the defendants had made a motion to dismiss the amended bill and to dissolve the restraining order, and apparently it was assumed by

the parties that the restraining order issued on July 5, 1937, was in existence. While the court dismissed the bill, it determined that the status quo should be retained pending the appeal, and therefore provided for the continuance of the restraining order with modifications conditioned upon the filing of the $25,000 bond. It may be argued that the court intended to require a bond which would be in harmony with the Norris-LaGuardia Act, in that at that time the court was of the opinion that the Norris-LaGuardia Act applied to the controversy. But a reading of the restraining order as modified and the injunctive bond which was required lends no support to defendants' position that there was any intention on the part of the court to require the complainants to secure the defendants for anything more than the costs, damages, expenses and attorneys' fees resulting from the issuance of the original restraining order and its continuance, as modified, from July 18, 1938, to the date when the mandate of the Circuit Court of Appeals was filed in January, 1939. The Norris-LaGuardia Act is silent as to any restraining order pending appeal. At the time that Judge Collet continued the restraining order, Equity Rule 74 was in effect. It was the only appropriate rule or statute which would apply to the situation which confronted the court. It reads:

"When an appeal from a final decree, in an equity suit, granting or dissolving an injunction, is allowed by a justice or a judge who took part in the decision of the cause, he may, in his discretion, at the time of such allowance, make an order suspending, modifying or restoring the injunction during the pendency of the appeal, upon such terms, as to bond or otherwise, as he may consider proper for the security of the rights of the opposite party."

The application of this rule becomes apparent when it is noted that when Judge Collet dismissed the bill on its merits, he stated in his opinion (23 F.Supp. 998, 1001): "For the reasons stated the plaintiffs' bill and interveners' petition should be dismissed and the temporary restraining order heretofore issued should be dissolved." It was in the decree, however, which was entered later that provision was made for a modified restraining order pending appeal. Whether the court was correct at that time in assuming that any restraining order was outstanding is not controlling. The factual situation related at least indicates that the modified restraining order was conditioned, not upon the filing of a bond in conformance with the Norris-LaGuardia Act, but rather a bond exacted by the court in its discretion as provided in Equity Rule 74.

It will be remembered that the $2,000 and $10,000 bonds merely secured the defendants against costs and damages resulting from the issuance of the injunctive orders, and in that it is apparent that the court intended that such bonds should be under the Clayton Act, the question arises as to the interpretation and construction which should be given to the term "costs and damages." In determining the interpretation to be given to these words, and which words reflect the extent and scope of the coverage of the two bonds in question, resort must be had to the construction given by the courts to similar language in injunction bonds required by the courts under the common law. See Salvage Process Corp. v. Acme Co., supra. The words "costs and damages", standing alone, do not reveal what they embrace. In Oelrichs v. Spain, supra, 15 Wall. at page 231, 21 L.Ed. 43, the Supreme Court held that "costs" as used in injunction bonds conditioned upon the payment of defendant's "costs and damages" meant only "taxable costs." And the common law rule as enunciated in the Federal decisions denying the recovery of attorneys' fees on injunction bonds has been applied with like results to territorial statutes similar to 28 U.S.C.A. § 382, Lindeberg v. Howard, 9 Cir., 1906, 146 F. 467, and to Section 382 itself by two courts which have expressly considered the question, Heiser v. Woodruff,* 10 Cir., 1942, 128 F.2d 178, 180; Salvage Process Corp. v. Acme Co. supra. Moreover, the rule has also been applied without specific reference to Section 382, but to which statute it seems clearly applicable. See Covington County v. Stevens, 5 Cir., 1919, 256 F. 328, 337; In re Farmers' Union Mercantile Co., D.C. 1928,

---

* While it appears that certain traveling expenses were allowed in this case, it will be observed that they were incurred as the proximate result of the outstanding injunction which prevented the taking of depositions in a separate proceeding pending in bankruptcy court. They were not allowed as expenses of litigation in the injunction suit. They were allowed as damages because the restraining order required an additional trip of attorneys in other litigation.

583

26 F.2d 102; Travelers Mutual Casualty Co. v. Skeer, D.C. 1938, 24 F.Supp. 805; Duke Power Co. v. Greenwood County, D.C. 1938, 25 F.Supp. 419. In re Farmers Union Mercantile Co., supra, the court stated (page 103 of 26 F.2d):

"* * * the defendant is entitled to be indemnified only for the damages caused to him by the restraint imposed, and not for the costs of the suit, or the expenses incurred in ridding himself of the restraint."

And in Salvage Process Corp. v. Acme Co., supra, 104 F.2d at page 107, the court declared that the cost of printing briefs—clearly an expense of litigation—could not be recovered as damages under Section 382, and apparently decided that such expenses could not be distinguished from expenses incurred by way of legal fees. In light, therefore, of the fact that Congress did not use any words or provisions in Section 382 which signify an intention to enlarge or amplify the scope of the coverage which had been the subject of many Supreme Court decisions considering injunction bonds under the common law, it is fair to conclude that all Congress intended was to make mandatory the security which formerly had been exacted by the courts in their discretion in granting injunctive relief. Logically, it seems difficult to distinguish other expenses of litigation so that a rule different from that applied to attorneys' fees may be applied to them. Attorneys' fees are expenses incurred as the proximate result of granting erroneous injunctive relief. The expenses herein which are sought to be allowed are also for services claimed to have been incurred as the proximate result of the granting of erroneous injunctive relief. Both attorneys' fees and other expenses claimed herein, such as traveling, telephone, telegraph, the hiring of economists and public accountants, engaging temporary offices, printing, and stenographic services, are all of the same general nature—litigation expense.

Apparently, it was the view of the court in Oelrichs v. Spain that sound public policy forbids the recovery of attorneys' fees as damages under an injunction bond. It was recognized therein that, in equity cases, the expenses of litigation as a general rule should be borne by each litigant. In absence of an undertaking to do more, that principle seems particularly appropriate to the present situation. In passing, it may be noted that both the plaintiffs and the defendants have incurred heavy expenses in this protracted lawsuit. The expenses of the defendants, other than attorneys' fees, aggregate as the claim against the $10,000 bond, according to defendants' computation, the sum of $9,630.67, and as against the $2,000 bond, $1,858.05. They encompass a wide range of expenditures, some of which may have been incurred as the direct result of the restraining orders granted and others seem exceedingly remote and of questionable necessity in so far as they relate to motions or proceedings seeking to set aside, or in defense of, outstanding injunctions. In any event, it would seem that Section 382, as construed in light of the common law, excludes from the term "damages" the expenses of litigating injunction actions other than the ordinary taxable costs and disbursements regardless of whether the expenses are attorneys' fees or other expenses of litigation.

The recovery on the $2,000 bond and the interpretation to be given to the words "costs and damages" as used therein, become moot in that the court is allowing full recovery of the reasonable expenses and attorneys' fees occasioned by the erroneous issuance and continuance of the restraining order under the $25,000 bond, and in that the allowance hereinafter made does not exceed the principal of that bond, there is no purpose in determining the exact coverage of the $2,000 bond. But the observations indicated above apply to both the $2,000 and $10,000 bonds.

However, aside from the question as to whether the $10,000 bond covers expenses incurred as a result of the issuance of the temporary injunction, any expense resulting therefrom arises in connection with the appeal from the three-judge decree, and there are convincing reasons why this appeal expense should not be recoverable herein. It was the defendants who initiated the call for the three-judge court. They concluded that the August 24, 1937, statute required such a statutory court to assume jurisdiction. In their brief before the Supreme Court, they summarized their argument in that regard as follows:

"The three-judge district court having been properly constituted and impaneled, under the terms and directions of the Act of August 24, 1937, had jurisdiction of the cause below to hear and determine all of the questions presented by the pleadings and evidence."

That appeal was entirely abortive in that it decided nothing except to determine that the three-judge court did not have jurisdiction. The merits of the controversy or the propriety of granting the temporary injunction was not touched upon. The vacation of the temporary injunction was granted simply because the appellants had mistakenly appealed to the Supreme Court and had thereby lost their right to appeal to the Circuit Court of Appeals. True, the plaintiffs did not challenge the jurisdiction of the three-judge court and it was the Supreme Court which on its own motion held that it had no jurisdiction. But if any expenses are recoverable as the direct result of the issuance of injunctive relief, it must appear that such expenses are not only reasonable, but are such as were necessarily incurred as the proximate result of the issuance of the injunctive relief. Here, we have a situation where the entire expense of this appeal was occasioned by the defendants' requesting the wrong court to assume jurisdiction in considering the application for a temporary injunction and mistakenly taking an appeal to the Supreme Court from the decree which was entered rather than to the Circuit Court of Appeals. This is apparent from a reading of the decision of the Supreme Court. In fact, that which the defendants did is comparable to taking an appeal from a non-appealable order. It follows, therefore, that the expenses of this appeal were unnecessarily incurred and not allowable as damages under the bond. See, Garlington v. Copeland, 43 S.C. 389, 21 S.E. 317; Grove v. Wallace, 1898, 11 Colo.App. 160, 52 P. 639; Palmer v. Vermillion County Supervisors, 46 Ill. 447. In addition, it may be pointed out that on the appeal the Supreme Court taxed all costs against the appellants —the defendants. This fact characterizes the appeal not only as unnecessary and without merit, but should set at rest the question as to who should pay the appeal expenses.

■ A different situation is presented, however, with regard to the $25,000 bond. Not only does the bond specifically embrace damages, expenses and attorneys' fees, but it also purports to secure the defendants against damages of the character referred to, not only by reason of the continuance of the injunction during the appeal, but by reason of the original issuance of the restraining order. It would appear that the court was of the opinion that the original bond of $2,000 might be inadequate in light of the fact that over a year had elapsed since the temporary restraining order was issued. That the court had the right to grant a continuance of the restraining order as modified upon condition that the bond cover not only the continuance of the restraining order, but also its original issuance can scarcely be doubted. It follows, therefore, that the $25,000 bond secured these defendants against costs, expenses and attorneys' fees occasioned by the issuance of the restraining order on July 5, 1937; its continuance until December 31, 1937; and its reinstatement as modified from July 18, 1938, to January 28, 1939. The restraining order had no vitality during the existence of the temporary injunction. In light of the record, it would appear that the restraining order ended on the day that the temporary injunction was ruled; at least, it was dormant from December 31, 1937, until it was resuscitated by the court when the modified restraining order was entered on July 18, 1938.

■ The determination of the items of expense and the amount of the attorneys' fees attributable to the issuance and the continuance as modified of the original restraining order is not free from difficulty. Litigation between the parties was pending during all of this time. Much preparation was devoted to motions to quash, to dismiss the bill for various jurisdictional reasons, etc.; much time was spent in preparing for, and in engaging in, the trial before the three-judge court and the appeal from the temporary injunction; and, in addition, much time was spent in preparing for the trial of the controversy on the merits. Even under the extended coverage of the Norris-LaGuardia Act, when proceedings which involve jurisdictional questions or sufficiency of service, or proceedings which arise irrespective and independent of applications for or injunctive orders outstanding, it would seem that each litigant, with respect to such expenses, must absorb his own. The same observation may be made with reference to the vast amount of time spent in preparation for trial on the merits and the subsequent appeal. There was no injunctive order outstanding when the bulk of that work was done. Obviously, the expense of that lengthy trial and the appeal from the permanent injunctive decree cannot be attributed to the expired restraining order or the vacated temporary injunction. The only expenses and attorneys' fees di-

rectly attributable to the granting of the temporary restraining order arise by reason of the motions made to dismiss and to vacate the restraining order before Judge Otis, the three-judge court, and Judge Collet. But when the motion to vacate the restraining order was made before Judge Collet, there was no restraining order in effect. This appears from Judge Collet's order of March 3, 1939. The Court cannot give effect to any informal understanding that may have existed between the parties which is not reflected in the record, or to any assumption that either party may have entertained in that regard. As a legal proposition, it seems clear that, when the motion was argued before Judge Collet on June 13, 1938, there was no effective injunctive restraint outstanding as against these defendants. Consequently, no allowance can properly be made for the proceedings which took place before Judge Collet, when in addition to the motion for a dismissal of the bill, the defendants sought to obtain an order dismissing a purported outstanding restraining order. Furthermore, the proceedings before Judge Collet were primarily directed to the dismissal of the amended bill. Defendants' Exhibits 146 and 147 were typewritten briefs submitted to Judge Collet. Exhibit 146 is forty-six pages long. About three pages are devoted to reasons why the restraining order should be dissolved. Exhibit 147, the reply brief, is fourteen pages long. Two pages are devoted to the argument pertaining to the request for the vacation of the purported outstanding restraining order.

It should be observed that the appeal from Judge Collet's order dismissing the bill only involved incidentally the propriety of the order continuing the temporary restraining order during the appeal. The defendants herein did not appeal from the provision of Judge Collet's order which continued the restraining order in effect. They merely sought to sustain as appellees the court's order dismissing the bill. Obviously, if the court sustained the order dismissing the bill, all injunctive orders would be dissolved. However, in seeking to sustain the court's order of dismissal, defendants were unsuccessful. How, then, can this Court, within the terms of the $25,000 bond, allow defendants' expenses and attorneys' fees which were incurred on an appeal when it is apparent that the appeal did not result from the entry of the restraining order, but rather from the dismissal of the bill. In other words, even though no restraining order was outstanding, defendants would have had to incur the expense of attorneys' fees involved in this appeal. The existence of the restraining order did not enhance their burden as appellees. The injunction would end on the return of the mandate of the Circuit Court of Appeals regardless of the outcome of the appeal. In fact, appellees' brief before the Circuit Court of Appeals clearly indicates that no efforts were expended by the defendants in attempting to have the court rule on the propriety of granting a restraining order during the pendency of the appeal. This appears from appellees' brief wherein it is stated:

"We have not burdened the court with a discussion of appellants' points concerning the original issuance and modification of the restraining order of July 5, 1937. In our opinion, the question is unimportant because it will be determined by this court's conclusions of the main issue."

In addition, it is quite impossible on the showing herein to make any finding as to the portion of attorneys' fees and expenses which may have been attributable to any efforts directed to the dissolution or vacation of the restraining order pending this appeal. If for no other reason, therefore, any expenses which may have been incurred in endeavoring to vacate Judge Collet's restraining order pending appeal cannot be properly assigned as recoverable items of damage on this bond.

The Court concludes, therefore, that the recovery herein on the $25,000 bond must be limited to the attorneys' fees and expenses incurred by reason of the motion to vacate the original restraining order which resulted in the court's order of August 13, 1937, and the subsequent motion to dismiss the bill and to vacate the restraining order, which motion was submitted to the three-judge court and considered by that court when the application for the temporary injunction was submitted and considered. It is apparent, however, that the expenses and attorneys' fees incurred by reason of the proceedings before the three-judge court were primarily concerned with meeting plaintiffs' application for a temporary injunction. This necessarily is so because Judge Otis, on August 13, 1937, had denied defendants' motion to vacate the restraining order. The three-judge court was convened in October, 1937,

and the situation had not changed in the meantime so as to justify a reconsideration of Judge Otis' order. Moreover, it must be clear that, on this record, the problem of segregating the attorneys' fees and expenses as between the two motions, that is, the motion to dismiss the restraining order and the opposition to the granting of the temporary injunction, is a matter of clear conjecture. There is an utter absence of any satisfactory testimony which would permit the Court to make such a segregation. It appears that there was submitted to the three-judge court two briefs—Defendants' Exhibits 139 and 140. Exhibit 139 was the trial brief and Exhibit 140 was the brief submitted to the court after the hearing was concluded. Exhibit 139 is entitled "Brief of Certain of the Defendants in Support of Their Motion to Dismiss Plaintiffs' Amended Bill in Equity; The Petition of Interveners; and, In Opposition to the Issuance of a Preliminary Injunction." Point II of the brief urges that the restraining order be vacated and that the prayer for the temporary injunction be denied. The argument in the brief was predicated on the premise that no injunctive relief could be granted because of plaintiffs' failure to comply with the conditions precedent of the Norris-LaGuardia Act. The points and authorities urged thereunder were just as pertinent, of course, to defendants' objection to the granting of a temporary injunction. It seems clear that the principal issues before the three-judge court arose by reason of plaintiffs' application for a temporary injunction, the defendants' objections thereto, and the request that the bill be dismissed. This is evident from Exhibit 140, which is entitled "Brief of the Defendant, International Ladies' Garment Workers' Union, David Dubinsky, as President thereof, and Others, in Opposition to the Issuance of a Preliminary Injunction." A reading of that brief unmistakably indicates that the issue of the propriety of the issuance of a restraining order was completely subordinated to the issue as to whether or not a temporary injunction should be granted. It is the Court's opinion, therefore, that any attempt to apportion any part of defendants' expense and attorneys' fees to the incidental issue of the propriety of the issuance of the original restraining order is quite impossible on this record. Therefore, as the proximate result of the issuance of the restraining order, the only expenses and attorneys' fees which can be segregated

and appraised, and which are reasonably free from conjecture, pertain to the proceedings before Judge Otis, when the defendants sought to have the restraining order vacated. Defendants' Exhibits 134 and 136 were filed with the court in connection with this motion. The testimony indicates that a bill of $560.80 was incurred for printing one hundred copies of Exhibit 134. Obviously, it would not be fair to charge the plaintiffs with the cost of printing one hundred briefs on a motion of this character. There were no circumstances which required that number of copies in order to present properly the defendants' motion. Exhibit 136 was the reply brief, and is eighteen pages in length. The charge made for printing the reply brief seems palpably unreasonable in that it reflects a charge of about $10 per page. The Court has therefore endeavored to allow for the printing of these two briefs a sum which seems reasonable. There are other expenses which should be considered as properly allocable to the resistance to the restraining order, such as traveling expense, telephone, short-hand reporter, etc. Then, in addition, there should be allowed a reasonable attorneys' fee. In light of the character and novelty of the issues involved, the experience and ability of the attorneys employed, the importance of the litigation, the time involved, and the other factors generally considered in appraising attorneys' fees, the Court has determined that the sum of $1,500 for such services is reasonable. As expenses of litigation, the Court finds under the evidence that the sum of $500 will fairly and amply cover the expenses which may be allocable to this motion.

Manifestly, it is somewhat difficult to determine whether the various items of expense which enter into the Court's calculations are reasonable and whether they were solely connected with the motion referred to. That there must be some approximation seems obvious. However, the Court has endeavored to make such allowance in this regard as seems to be just, fair and reasonable and which can be fairly considered as the proximate result of the issuance of the erroneous injunctive relief referred to.

■ In disposing of the applications for allowances on the undertakings and bonds filed by the plaintiffs and interveners herein, the Court has endeavored to determine the rights of the defendants as against

the plaintiffs, the interveners, and the surety, as evidenced by the scope of the Court's orders and the undertakings filed in pursuance thereof. If it be urged that the Court should exercise its powers as a court of equity and allow expenses and attorneys' fees as against the plaintiffs and the interveners regardless of the obligations reflected by the undertakings and bonds, it is the Court's view that, in light of all the circumstances, each party should defray its own expense of litigation and that the successful litigant should be relegated to its ordinary taxable costs and disbursements herein. However, in making the order allowing to the defendants the expenses and attorneys' fees under the $25,000 bond, it is the Court's opinion that it has no discretion but to grant to the defendants as damages such sum as the evidence fairly justifies. Nothing stated herein, however, should be considered as precluding the defendants from recovering, in addition to the allowance made herein, their ordinary costs and disbursements as may inure to them in this proceeding.

An exception is reserved to each and every party aggrieved by this decision.

Findings of fact and conclusions of law consistent herewith are being filed as of this date.